**Brett EPPS, Petitioner–Appellant,**

v.

**COMMISSIONER OF CORRECTIONAL SERVICES, Respondent–Appellee.**

**No. 846, Docket 93–2427.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1993.

Decided Jan. 11, 1994.

Perry S. Reich, Lindenhurst, NY (Schapiro & Reich, Lindenhurst, NY, on the brief), for petitioner-appellant.

Paul Shechtman, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty., New York City, on the brief), for respondent-appellee.

Before: NEWMAN, Chief Judge, OAKES and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Chief Judge:

Brett Epps appeals from the June 24, 1993, judgment of the District Court for the Southern District of New York (Sonia Sotomayor, Judge) dismissing, on recommendation of Magistrate Judge Kathleen A. Roberts, his petition for habeas corpus to challenge his state court conviction. He alleged that the prosecutor used peremptory challenges in a racially discriminatory manner. The District Court ruled that Epps's claim had been procedurally forfeited for failure to

raise the issue during jury selection. Epps contends that procedural default should not be invoked because of what he contends is a state court ruling on the merits of his claim. We disagree and therefore affirm.

## Background

Epps was charged with attempted murder, robbery, and criminal possession of a weapon. Jury selection took place on April 3, 1986. The voir dire was not recorded. Epps did not object to the State's use of peremptory challenges during, or at the conclusion of, jury selection. The jury returned its verdict on April 17, 1986. On April 30, 1986, the Supreme Court decided *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At sentencing on May 7, 1986, Epps joined in a motion made by his co-defendant to set aside the verdict based on *Batson.* Relying on notes kept during the *voir dire,* the co-defendant's counsel represented to the Court that there were 50 persons in the venire, 11 of whom were African–American. The State used 16 peremptory strikes, 8 of which were against African–Americans. One African–American was removed by mutual consent of the parties for medical reasons. The final two African–Americans were removed by peremptory strikes by the defense. No African–Americans were left on the jury. However, one of the African–Americans whom the State had peremptorily challenged was allowed to sit as the second alternate because the entire venire had been exhausted and the Court did not want to summon a new panel.

The State responded to the defense claim, not by presenting legitimate reasons for its peremptory challenges, but by arguing that *Batson* should not be applied retroactively to trials predating the Supreme Court's decision. The trial court denied the motion with the following explanation:

> All right, your motion is denied. During voir dire the court was observant, as it is always, with reference to the number of black people or the people of different ethnic groups, coming up and, of course, as I say, there was a sprinkling of blacks here

and because they were not selected on the jury does not mean that they were arbitrarily excluded because of ethnic background.

> I, therefore, deny the motion because there has been no clear showing by the defense that the Assistant District Attorney arbitrarily excluded the blacks or any other ethnic group because of some kind of prejudice.

Epps was sentenced and appealed to the Appellate Division, arguing that the State's use of peremptory strikes had violated his right to equal protection. In response, the State argued that Epps had "waived his claim, baseless in any event, that the People's use of peremptory challenges was racially discriminatory." The Appellate Division affirmed without opinion. 140 A.D.2d 1010, 529 N.Y.S.2d 928 (N.Y.App.Div.1988). The Court of Appeals subsequently denied a petition for leave to appeal. 72 N.Y.2d 956, 534 N.Y.S.2d 670, 531 N.E.2d 302 (N.Y.1988).

Epps then filed a petition for writ of habeas corpus in federal court. Magistrate Judge Roberts recommended to District Judge Sotomayor that the petition be denied on the ground that federal habeas review was barred because of Epps's state procedural default. The Magistrate Judge reasoned that the Appellate Division's affirmance without opinion should be presumed to be a ruling based on Epps's alleged procedural default. Judge Sotomayor adopted the Magistrate Judge's report in its entirety and denied the petition.

## Discussion

Because of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rests on a state procedural default that is independent of the federal question and adequate to support the prisoner's continued custody. *See Coleman v. Thompson,* —— U.S. ——, —— – ——, 111 S.Ct. 2546, 2554–55, 115 L.Ed.2d 640 (1991).[1]

1. Federal courts will consider a state petitioner's habeas claim despite a state procedural default if

The primary question in this case is whether the Appellate Division's affirmance, without opinion, of the judgment of conviction rests on a state procedural default.

In *Quirama v. Michele,* 983 F.2d 12 (2d Cir.1993), this Court revived, in light of *Coleman,* its earlier rule, enunciated in *Martinez v. Harris,* 675 F.2d 51 (2d Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982), that the Appellate Division's silent affirmance in the face of the State's argument that the claim was both procedurally barred and meritless should be presumed to rest on state procedural grounds.[2]

> New York permits review of the merits of claims not raised in the trial court only sparingly and it is thus reasonable to presume that silence in the face of arguments asserting a procedural bar indicated that the affirmance was on state procedural grounds.

*Quirama,* 983 F.2d at 14.

Epps seeks to avoid *Quirama*'s presumption because, he alleges, the state trial court ruled on the merits of his claim. Epps seeks to apply the alternative presumption enunciated in *Ylst v. Nunnemaker,* ── U.S. ──, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). In *Ylst,* Justice Scalia analyzed the presumptions to be made from unexplained state orders as follows:

> The consequent question presented by the present case, therefore, is how federal courts in habeas proceedings are to determine whether an unexplained order (by which we mean an order whose text or accompanying opinion does not disclose the reason for the judgment) rests primarily on federal law. The question is not an easy one. In *Coleman* itself, although the order was unexplained, the nature of the disposition ("dismissed" rather than "denied") and surrounding circumstances (in particular the fact that the state had rest-

ed its argument entirely upon a procedural bar), indicated that the basis was procedural default. But such clues will not always, or even ordinarily, be available. Indeed, sometimes the members of the court issuing an unexplained order will not themselves have agreed upon its rationale, so that the basis of the decision is not merely undiscoverable but nonexistent.

> The problem we face arises, of course, because many formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: *where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.* If an earlier opinion "fairly appear[s] to rest primarily on federal law," *Coleman,* [── U.S. at ──], 111 S.Ct. at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

── U.S. at ──, 111 S.Ct. at 2594 (first emphasis in original).

 We are not persuaded that the state trial court's summary rejection of the motion to set aside the verdict constituted the sort of "reasoned state judgment rejecting a federal claim" that will suffice to raise a presumption that a subsequent silent affir-

---

the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* ── U.S. at ──, 111 S.Ct. at 2565. Epps makes no claim of cause and prejudice or miscarriage of justice.

2. The *Martinez* rule had come under attack in *Asherman v. Meachum,* 932 F.2d 137 (2d Cir. 1991), *vac. on other grounds,* 957 F.2d 978 (2d Cir.1992), and *Peterson v. Scully,* 896 F.2d 661, 664 (2d Cir.), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990), but was rehabilitated after *Coleman* cast a negative light on much of *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

mance does not rest on procedural default. The trial judge gave no indication that he was reckoning with the requirements of *Batson*, which was not ruled to be retroactive until a year later. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). He ruled only that there had been "no clear showing" of a discriminatory use of peremptory challenges. Whether or not the showing that was made would have sufficed to oblige the prosecutor to articulate legitimate reasons had the claim been made at the time of jury selection, this was not a "reasoned" rejection of the federal claim. The trial court's remarks did not impute to the Appellate Division a "merits" ruling, especially in light of the unwavering New York practice of declining to consider jury selection claims unless presented at the time the jurors are chosen. *See People v. Barber*, 156 A.D.2d 1022, 549 N.Y.S.2d 313 (N.Y.App.Div. 1989) (holding *Batson* challenge untimely because objection made after all jurors were sworn), *appeal denied*, 75 N.Y.2d 866, 553 N.Y.S.2d 298, 552 N.E.2d 877 (N.Y.1990); *People v. Harris*, 151 A.D.2d 961, 542 N.Y.S.2d 411, 411 (N.Y.App.Div.1989) (holding *Batson* claim untimely because it was not made "before the jury, or the last juror including the alternates, is sworn," but remanding for new trial in interests of justice); *People v. Ortiz*, 69 A.D.2d 825, 825, 414 N.Y.S.2d 737, 738 (N.Y.App.Div.1979) (holding objection to jury selection process waived where not raised until after entire panel had been sworn); *see also People v. Thompson*, 79 A.D.2d 87, 435 N.Y.S.2d 739 (N.Y.App. Div.1981) (allowing claim of racially discriminatory use of peremptory challenges where claim made after jury sworn but before any evidence has been taken). Though *Batson* is to be applied retroactively, the benefit of its retroactive application is available only to a litigant who has preserved his peremptory challenge claim in accordance with the requirements of state procedural law.

■ Epps also seeks to avoid procedural default by pointing out that the State did not argue untimeliness in the state trial court, asserting the procedural ground for the first time in the Appellate Division. Though New York recognizes that the State may be held to have waived some forms of procedural default, *see People v. Mezon*, 80 N.Y.2d 155, 160, 589 N.Y.S.2d 838, 841, 603 N.E.2d 943 (N.Y.1992), this exemption does not apply to a defendant's failure to observe procedural requirements designed to promote the "efficiency of the courts or 'orderly trial procedures.'" *Id.* (citation omitted).

The judgment of the District Court is affirmed.