**Joseph FAMA, Petitioner,**

v.

**COMMISSIONER OF CORRECTIONAL SERVICES, Respondent.**

**No. 96 CV 4860(SJ).**

United States District Court, E.D. New York.

Sept. 30, 1999.

*tellano v. Board of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991).

Schapiro & Reich, Lindenhurst, NY by Perry S. Reich, for Petitioner.

Charles J. Hynes, District Attorney of Kings County, Brooklyn, NY by Roseann B. MacKechnie, Monique B. Ferrell, Assistant District Attorneys, for Respondent.

## MEMORANDUM AND ORDER

JOHNSON, District Judge.

Joseph Fama ("petitioner") brings the present action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reasons set forth herein, this petition is denied.

## BACKGROUND

### I. *Summary of Facts*

On August 23, 1989, in Bensonhurst, Brooklyn, sometime after 8 PM, thirty to forty white males gathered at the intersection of 68th Street and 20th Avenue, armed with baseball bats, golf clubs and other weapons. This group was there to confront blacks expected to attend a birthday party being given for a white female resident of the neighborhood.

Around 9:30 PM, four unsuspecting African–American youths walked along 20th Avenue, passing 68th Street. These young men, Yusef Hawkins, Troy Banner, Luther Sylvester and Claude Standford, were there looking for the address of a man who had a car to sell. As they passed 68th

Street, a white youth on a bicycle raced up the block yelling, "they're here, they're here." Someone in the white crowd shouted "Let's club the niggers." Another yelled, "f--k it. Let's not club them. Let's shoot the niggers and show Gina [the woman hosting the birthday party]."

The white males rushed toward the African–Americans in two groups of at least eight to ten individuals each. One group chased Hawkins, who became separated from his friends. The group that was chasing Yusef Hawkins finally cornered him. Standing just a few feet away from him, a gunman, later identified as petitioner, fired a handgun four times while his accomplices looked on, striking Hawkins twice in the chest and once in the left hand. Hawkins died a short time later.

Petitioner thereafter fled Brooklyn and was not apprehended until he surrendered to authorities in Oneota, New York on August 31, 1989. While in custody, on two separate occasions, petitioner told two different people that he intentionally shot Yusef Hawkins because he was black. The evidence admitted at petitioner's subsequent trial in the Supreme Court of New York, Kings County, included these admissions of guilt, as well as the testimony of eyewitnesses who stated that petitioner participated in the planning and perpetration of the armed riot and eventual shooting.

Petitioner was convicted on one of two counts of murder in the second degree (murder with depraved indifference),[1] riot in the first degree, criminal possession of a weapon in the third degree, three counts of unlawful imprisonment in the first degree (pertaining to Banner, Stanford 'and Sylvester), three counts of menacing (also pertaining to Banner, Stanford, and Sylvester), and four counts of discrimination. On June 11, 1990, petitioner was sentenced to consecutive terms of imprisonment of twenty-five years to life for the

murder count, one and one-third to four years for the riot count, two and one-third to seven years for weapon possession, and one and one-third to four years for each count of unlawful imprisonment. In addition, he was sentenced to concurrent terms of imprisonment of ninety days for each menacing count and one year for each discrimination count, the sentences to run concurrently with those imposed on all other counts. Finally, petitioner was sentenced to a total of $2,000 restitution on the discrimination counts.

## II. *Procedural History*

Petitioner appealed from this judgment of conviction to the Appellate Division, Second Department. By memorandum decision and order dated February 6, 1995, the Appellate Division unanimously affirmed the conviction. *People v. Fama*, 212 A.D.2d 542, 622 N.Y.S.2d 732 (1995).

On February 9, 1995, petitioner applied for leave to appeal to the New York Court of Appeals. On June 14, 1995, petitioner's application was denied without prejudice to renew his application on or before September 30, 1995, upon substitution of counsel. *People v. Fama*, 86 N.Y.2d 734, 631 N.Y.S.2d 615, 655 N.E.2d 712 (1995). Petitioner subsequently renewed his application on September 28, 1995, and it was denied on December 11, 1995. *People v. Fama*, 87 N.Y.2d 901, 641 N.Y.S.2d 230, 663 N.E.2d 1260 (1995).

In support of the instant petition, filed on October 3, 1996, petitioner alleges almost innumerable violations of his due process rights under the Fourteenth Amendment. He specifically contends that: (1) his conviction of murder in the second degree was not supported by legally sufficient evidence; (2) the trial court improperly instructed the jury on accessorial liability with regard to the murder counts; (3) the court failed to respond to jury's

---

**1.** The court had submitted to the jury two alternative counts of second degree murder—intentional, and with depraved indifference—along with the lesser-included counts of man-slaughter in the first degree, pertaining to the intentional murder count, and manslaughter in the second degree, pertaining to the depraved indifference murder count.

questions in the manner requested by petitioner; (4) the court gave an instruction to the jury that "overemphasized the role of the jury in assessing truthfulness rather than accuracy," Petitioner's Memorandum of Law at 49; (5) the trial court closed the courtroom twice during deliberations, as well as during a pre-trial hearing and a conference, depriving petitioner of his right to a public trial; (6) petitioner was absent when the court, in the presence of petitioner's counsel, questioned a juror about a report of harassing telephone calls; (7) petitioner was deprived of his right to a fair trial and compulsory process when the court limited petitioner's direct examination of defense witness Al Russo concerning an alleged prior inconsistent statement by People's witness Robert Russo regarding petitioner's jailhouse confession; (8) the court, over the objection of defense counsel, "improperly eliminated" Jewish members of the jury pool during the course of voir dire, Petitioner's Memorandum of Law at 60; (9) the prosecution exercised challenges to potential jurors on the basis of their "white race," id.; (10) the court failed to ensure that petitioner received a fair trial "in the face of ongoing adverse publicity, courtroom outbursts, and intimidation of the jury," id. at 61; (11) the court denied petitioner's request that jurors be questioned during voir dire about their knowledge of a statement by Keith Mondello (who also was indicted) implicating petitioner; and (12) the court denied petitioner's request to question jurors individually about "media exposure ... to avoid tainting other potential members of the jury," id.

The claim of legally insufficient evidence, although included in the application for leave to appeal to the New York Court of Appeals, had not been presented to the Appellate Division, Second Department, to the extent it alleged insufficiency for reasons other than that the evidence did not prove petitioner's identity as the perpetrator of the crime beyond a reasonable doubt. The same was true of claims four through nine, eleven and twelve listed above. Accordingly, petitioner requested that the petition be held in abeyance pending the filing of a motion for a writ of error coram nobis in the Appellate Division, on the ground that appellate counsel had rendered ineffective assistance by failing to raise these claims. The request to stay this Court's decision was granted, and the petition was held in abeyance from April to August 1997. See Docket nos. 19 and 20 (Order dated April 21, 1997, and letter to the Court dated July 30, 1997, requesting reinstatement to the active calendar). The motion for a writ of error coram nobis was denied by the Appellate Division by decision and order dated July 28, 1997, on the ground that petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Fama*, 241 A.D.2d 555, 663 N.Y.S.2d 992 (1997).

Shortly thereafter, petitioner requested by letter dated October 9, 1997, that this Court again hold his petition in abeyance pending his filing of a motion to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10. Although this Court issued no order with respect to this request, petitioner proceeded to file the motion in the Supreme Court, Kings County on June 1, 1998, alleging the following: (1) newly discovered evidence (obtained by petitioner "in the Summer of 1997") shows that prosecution witness Robert Russo received a benefit from the Kings County District Attorney's Office (consideration of his cooperation in connection with his then-pending application for work release) in exchange for testifying, contrary to what he stated under oath; (2) the prosecution allowed false testimony to remain in evidence (petitioner submitted a hearsay affidavit of Frank Albanese stating that Robert Russo admitted to him in 1992 that he had perjured himself, as well as an affidavit from an eyewitness, Franklin Tighe, who purportedly "recanted his entire trial testimony," and admitted to defense counsel "that he had lied under oath"); (c) the judgment of conviction was obtained based on fraud and misrepresentation; and (d) had the new evidence been discovered at the time of trial, the outcome

would have been different. *See* Docket no. 26 (copy of brief submitted ·to state court in support of § 440.10 motion). This motion was denied by the Supreme Court, Kings County, on December 14, 1998, and leave to appeal this decision to the Appellate Division was denied on June 7, 1999.

On June 23, 1999, petitioner moved to amend his pending habeas petition to add these latest claims, and requested an evidentiary hearing.

## DISCUSSION

### I. *Motion to Amend the Petition*

■■ A motion to amend a petition for a writ of habeas corpus is generally governed by Federal Rule of Civil Procedure 15(a). *See* Rule 11 of the Rules Governing Section 2254 Cases ("the Section 2254 Rules") ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules."). Pursuant to this rule, leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, "[a] federal habeas petitioner has no absolute right to amend his petition." *McCool v. New York State,* 29 F.Supp.2d 151, 160 (W.D.N.Y. 1998) (citing *Briddle v. Scott,* 63 F.3d 364, 375 (5th Cir.1995)).[2] The language of Section 2254 Rule 11 clearly implies that under some circumstances it may be inappropriate to grant leave to amend.

■■ Petitioner's failure to timely raise his new claims based on the affidavits of Tighe and Albanese strongly weighs against the application of Rule 15(a). In this regard, the Court notes that the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2244 (1994 & Supp. II 1996) by imposing a one-year limitation period on

the filing of habeas petitions, running from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if applicant was prevented form filing by such State action;

. . . .

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). In cases where, as here, the conviction became final before April 24, 1996 (the effective date of the AEDPA), a one-year grace period applies, ending on April 24, 1997, during which petitions for habeas corpus are considered timely. *See Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir.1998). This limitations period, even if not applicable by its terms to a motion to amend the petition, is certainly a relevant guideline in determining whether petitioner has exercised due diligence in pursuing the additional claims.

■■ According to petitioner, the alleged fact of Tighe's recantation was first communicated to his trial attorney during the trial, prior to the summations and jury charge. *See* Affidavit in Support of § 440.10 Motion at ¶ 5(g) (docketed as document no. 26). Indeed, it was the subject of a motion to set aside the verdict made prior to sentencing. Similarly, Albanese, who attests based on hearsay that Robert Russo collaborated with the prosecution to commit perjury at trial, wrote a letter dated February 27, 1995 (attached to the

---

**2.** It is unclear whether there are circumstances under which a motion to amend may be construed as a second or successive petition for habeas relief and transferred to the Court of Appeals for the Second Circuit for pre-clearance pursuant to 28 U.S.C. § 2244(b)(3)(A). *Compare McCool,* 29 F.Supp.2d at 161 (ordering that motion to

amend be transferred), *with Letizia v. Walker,* No. 97 Civ. 0333, 1998 WL 567840, at *1 (W.D.N.Y. Aug. 27, 1998) (rejecting magistrate judge's report and recommendation that motion to amend be treated as successive petition). For reasons discussed further herein, this Court finds it unnecessary to rule on this issue.

brief in support of the § 440.10 motion) to David DePetris—who still represented petitioner at the time—stating precisely the same allegation.

Had these allegations been brought in a separate habeas petition, the tolling provisions of § 2244(d)(1)(B) (filing of petition impeded by state action) and (D) (newly discovered evidence) would not have been applicable, and therefore would not have extended the deadline beyond April 24, 1997. Thus, when viewed with reference to the grace period established in *Ross*, the motion to amend is untimely by more than two years. Moreover, while the pendency of a motion for state collateral relief filed *prior* to April 24, 1997, would toll the running of the grace period, *see Ross*, 150 F.3d at 103, petitioner did not file his § 440.10 motion until June 1998. Given petitioner's completely unjustified delay, he will not be permitted to add either of these allegations to the petition.

The remaining "newly discovered evidence" cited by petitioner does not even colorably support reversal of his conviction. The letter from Assistant District Attorney James Kohler, in which Kohler states, "I recommend that [Robert Russo] be considered for a work release program" due to the assistance rendered by his testimony at trial, was written on September 11, 1990, three months after he was sentenced. *See* Affirmation in Support of Motion to Amend at Exh. C. It does not suffice to establish that Russo was promised such a recommendation *prior* to his testimony. Accordingly, the motion to amend the petition is denied in its entirety. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that the court may deny leave to amend under Fed.R.Civ.P. 15(a) for, inter alia, undue delay or the futility of amendment).

## II. *Unexhausted Claims*

■ In order to bring a petition for a writ habeas corpus, a petitioner must first exhaust the remedies available in the state courts or show that "there is either an absence of available state corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254. In order to meet the exhaustion requirement, petitioner must have "fairly presented" each federal claim to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

■ As noted above, claims one (to the extent it alleges insufficiency of the evidence for reasons other than failure to prove petitioner's identity as the perpetrator beyond a reasonable doubt), four through nine, eleven and twelve were not raised on direct appeal to the Appellate Division, though they were included in the application for leave to appeal to the New York Court of Appeals. This is inadequate to satisfy the exhaustion doctrine, because review by the Court of Appeals is permitted only at the court's discretion, and not as a matter of right. *See Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (holding that a claim is not exhausted where it has been "presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor") (internal quotation omitted).[3] Nor did petitioner exhaust these claims by pursuing a writ of error coram nobis alleging ineffective assistance based on appellate counsel's failure to raise them. *See Ehinger v. Miller*, 928 F.Supp. 291, 294 (S.D.N.Y.1996) (holding that writ of error coram nobis arguing that appellate counsel was ineffective for failing to argue that trial counsel had been ineffective did not satisfy the exhaustion requirement as to the ineffectiveness of trial counsel claim); *cf. Parron v. Quick*, 869 F.2d 87, 88–89 (2d Cir.1989) (holding that ineffective assistance of counsel claim was not exhausted where it was presented

---

3. To the extent *Udzinski v. Kelly*, 734 F.Supp. 76 (E.D.N.Y.1990), cited by petitioner, supports a contrary view, this Court respectfully declines to follow that decision.

"only by implication" as part of speedy trial claim).

▆▆▆▆ Generally, if a federal habeas petition contains unexhausted claims, the court should dismiss it. *Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).[4] However, "if the petitioner no longer has 'remedies available' in the state courts under 28 U.S.C. § 2254(b), we deem the claims exhausted." *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *see also Grey v. Hoke,* 933 F.2d 117, 120–21 (2d Cir.1991). Since collateral review in state court is unavailable where the record of the proceedings would have permitted review on direct appeal, *see* NYCPL § 440.10(2)(c), this Court will deem the above-mentioned claims exhausted. Nonetheless, petitioner's procedural default precludes review of these claims on the merits. *See Bossett,* 41 F.3d at 829.

▆▆▆▆ Federal courts may only address the merits of a claim that has been procedurally defaulted in the state court upon a showing that there was cause for the default and prejudice to the petitioner resulting therefrom. *See Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Bossett,* 41 F.3d at 829. A petitioner can demonstrate cause with " 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, … or that some interference by state officials made compliance impractical, … [or that] the procedural default is the result of ineffective assistance of counsel.' " *Bossett,* 41 F.3d at 829 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)) (internal quotation omitted). Here, petitioner has made no attempt to demonstrate cause for not raising the defaulted claims on direct appeal. Accordingly, this Court denies the previously enumerated claims without reaching the merits.

4. Prior to the enactment of the AEDPA, the Second Circuit required summary dismissal of a "mixed" petition containing both exhausted and unexhausted claims. The petitioner could then resubmit the petition either without the unexhausted claims or after exhaustion of all claims at the state level. *See*

## III. *Claims Not Preserved For Direct Appeal*

The second ground alleged in support of the petition—that the evidence of petitioner's guilt of depraved indifference murder was not legally sufficient because the evidence did not prove his identity as the gunman beyond a reasonable doubt—was presented to the Appellate Division on direct appeal. *See* Respondent's Exh. B at Points I and II; Exh. C. at Point I. At trial, however, petitioner had moved to dismiss the depraved indifference murder count, pursuant to N.Y.Crim.Proc.L. § 290.10, solely on the general ground that the prosecution had failed to make out a "prima facie case." *See* Respondents Exh. C at 39, n. 41. Accordingly, the Appellate Division held that Petitioner had failed to comply with New York's contemporaneous objection rule. *Fama,* 622 N.Y.S.2d at 733 ("The defendant's generalized motion to dismiss was insufficient to preserve for appellate review his claims that the proof of identification was legally insufficient to establish his guilt of depraved indifference murder beyond a reasonable doubt."); *see* N.Y.Crim.Proc.L. § 470.05(2). Petitioner's tenth claim—that the trial court failed to ensure a fair trial "in the face of … publicity," and jury intimidation—was also presented to the Appellate Division, which did not specifically discuss this contention in its opinion but held that "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit." *Fama,* 622 N.Y.S.2d at 733.

▆▆▆▆ "[A] federal court should not review a question of federal law decided by a state court if that decision is based on independent and adequate state substantive or procedural law…. This is so even where the state court declined to address the federal claims on the merits because

*Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 125 (2d Cir.1995). The AEDPA, however, authorizes federal courts to overlook the exhaustion requirement and deny a mixed petition on the merits. *See* 28 U.S.C. § 2254(b)(2).

the petitioner failed to meet state procedural law requirements." *Bacchus v. Reynolds*, 1995 WL 62599 at *3 (E.D.N.Y. 1995) (citing *Coleman v. Thompson*, 501 U.S. 722, 730–31, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)) (other citations omitted). Since "New York permits review of the merits of claims not raised in the trial court only sparingly," the Second Circuit has held that "it is thus reasonable to presume that silence in the face of arguments asserting a procedural bar indicated that the affirmance was on state procedural grounds." *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993) (following *Martinez v. Harris*, 675 F.2d 51 (2d Cir.1982)); *see also Epps v. Commissioner of Correctional Services*, 13 F.3d 615, 618 and n. 2 (2d Cir.1994) (noting that in light of the Supreme Court's decision in *Coleman*, the Second Circuit had revived its earlier rule, which was first enunciated in *Martinez* ).

■ Here, the Appellate Division explicitly denied the sufficiency of the evidence claim on procedural grounds. With respect to the claim of failure to ensure a fair trial, the lack of any indication in the record that petitioner raised the issue with the trial court, either by seeking a mistrial or otherwise, supports the inference that petitioner's procedural failure was the basis for the appellate court's decision.[5] Again, petitioner has failed to make a showing of cause for his failure to comply with the state procedural rules. Therefore, this Court will not exercise habeas review.

## IV. *Challenge to Jury Instructions on Accessorial Liability*

■ The only remaining claims are petitioner's second and third contentions in support of this petition, challenging the trial court's jury instructions on accessorial liability as applied to the depraved indifference murder count, as well as its failure to respond to jury requests during deliberation in the manner sought by petitioner. However, a challenge to a jury charge in a state trial is generally a matter of state law and is not reviewable by this Court absent a showing that the alleged errors were so serious as to deprive petitioner of a federal constitutional right. *See United States ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir.1974). To overturn his conviction, petitioner bears the burden of showing "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right [guaranteed by] the Fourteenth Amendment." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); *see also Morales v. Miller*, 41 F.Supp.2d 364, 377 (E.D.N.Y. 1999).

■ New York law provides that a defendant is criminally liable as an accessory when, "acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids" another to commit a crime. N.Y. Penal Law § 20.00. In this case, the trial court read this statutory section to the jury several times, and instructed, inter alia, that in order for petitioner to be proven guilty there must a finding that the "behavior of the defendant contributed to the realization of the agreement, plan or design [to engage in illegal activity to the detriment of others]," and that mere presence at the location and time of the crime and departure from the scene "are not sufficient to establish acting in concert." Trial Transcript ("Tr.") at 2846–48, 2864–65. The court also repeatedly instructed that petitioner must have had "the required mental culpability." *E.g., id.* at 2847–48. In addition, the court indicated his agreement with defense counsel's hypothetical proposition that "if ... individuals go to 69th Street and none of them know that someone has a gun and

---

**5.** Petitioner's argument that *Epps* and *Quirama* are distinguishable because the Appellate Division's affirmance in this case "expressly rests on alternative grounds" to procedural default, Petitioner's Reply Memorandum at 8, is simply incorrect. As discussed above, to the extent that the sufficiency of the evidence claim was specifically discussed, the appellate court clearly relied on petitioner's procedural default in denying the claim.

someone acts differently than what any of the other people intended, then that is not acting in concert"; the court responded, "[y]ou're right, because they didn't have the mental culpability." Tr. at 2868.

Even assuming that the trial court's instructions could have been clearer or that it should have provided more hypothetical examples to illustrate the prosecution's burden of proof regarding intent, as contended by petitioner, the failure to do so, by itself, does not establish that the court's instructions "so infected the entire trial that the resulting conviction violated due process." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (internal quotation omitted); *see Morales,* 41 F.Supp.2d at 377 (holding that trial court's refusal to re-charge jury on the issue of intoxication as it relates to intent was not a constitutional violation); *Pena v. Miller,* No. 94 Civ. 2820, 1997 WL 278051, at *5 (S.D.N.Y. May 23, 1997) (denying claim for habeas relief based upon trial court's purported omission of mens rea element of accessorial liability). Viewing the challenged portions of the charge in the context of the charge as a whole, as required, *see Morales,* 41 F.Supp.2d at 377, this Court concludes that petitioner has failed to show that the instruction was erroneous, let alone that the alleged errors rose to the level of a constitutional violation. Moreover, the Court finds that there was more than sufficient evidence in the record to support a charge regarding accessorial liability.

### V. *Improper Responses to Jury Questions*

Finally, petitioner asserts that the trial court's supplemental instructions in response to questions from the jury during deliberation were incorrect, inadequate and misleading, and that the court should have provided the responses requested by the defense. To obtain reversal of his conviction based on this claim, petitioner must not merely show that the trial court committed a constitutional error, but "establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson,* 507 U.S.

619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Placing this burden on a habeas petitioner is consistent with the constraints on collateral review; "[o]verturning final and presumptively correct convictions on collateral review because the State cannot prove that an error is harmless ... undermines the States' interest in finality and infringes upon their sovereignty over criminal matters." *Id.*

 A petitioner's burden of showing prejudice is "especially heavy" when, as here, a petitioner claims that a jury instruction was incomplete, because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson,* 431 U.S. at 155, 97 S.Ct. 1730. This Court, having reviewed petitioner's arguments in light of the record as a whole, including the ample evidence of his guilt, finds that petitioner has failed to show actual harm resulting from the failure to include the requested instructions.

### CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is denied, and the motion to amend the petition is also denied. This Court declines to issue a certificate of appealability, as Petitioner has not presented a "substantial showing of the denial of a constitutional right." *Nelson v. Walker,* 121 F.3d 828, 832 n. 3 (2d Cir.1997). The Clerk of the Court is directed that this order closes this case.

SO ORDERED.