Gary **RATTRAY**, Petitioner,

v.

Richard **BROWN**, District Attorney
of Queens County, Respondent.

No. 00–CV–2893(NG).

United States District Court,
E.D. New York.

May 7, 2003.

Gary Rattray, Collins, NY, Pro se.

Diane Kerr McCullough, Asst U.S. Atty., New York City, for Respondent.

## ORDER

GERSHON, District Judge.

*Pro se* petitioner, Gary Rattray, brings this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his March 12, 1997 conviction, after a jury trial, in New York State Supreme Court, Queens County (Fisher, J.), of one count each of Criminal Possession of Stolen Property in the Third Degree in violation of N.Y. Penal Law § 165.50, Grand Larceny in the Third Degree in violation of N.Y. Penal Law § 155.35, Criminal Mischief in the Fourth Degree in violation of N.Y. Penal Law § 145.00, and Possession of Burglar's Tools in violation of N.Y. Penal Law § 140.35. Petitioner was sentenced, as a second felony offender, to concurrent terms of imprisonment of three to six

years on the criminal possession of stolen property and grand larceny counts, and one year on the criminal mischief and possession of burglar's tools counts.

## Facts

Taken in the light most favorable to the People, the evidence at trial was as follows:

Police Officer Thomas Lyons testified that, on May 1, 1996, he and Officer Patrick Tompkins received a "radio run," a communication on their radio, that a male suspect had attempted to break into a dark colored car on 72nd Street just off of 31st Avenue in Queens. When they arrived at the scene they observed two dark colored cars, and one officer began to walk toward each car. Officer Lyons approached the black Mustang with Massachusetts license plates, and he noticed that the door lock cylinder was popped out. He saw a black male lying across the front seat with his hand on the rods attempting to start the car from under the broken steering column. The car started and lurched forward. Officer Tompkins took petitioner out of the car and recovered a screw driver, hacksaw, vice grips and other tools from the seat of the car and from petitioner. Later, while Officer Tompkins was trying to start the car, petitioner, sitting in the police vehicle, told the officer how to "pull the rods" to start the car.

In addition, the People called Mary Murphy, the driver of a black 1988 Mustang GT with Massachusetts license plates that she had borrowed from her brother-in-law while her car was being repaired. Ms. Murphy testified that, on May 1, 1996, she drove the car home and parked it on 72nd Street just off of 31st Avenue. She testified that, when she left the car it was in good condition, it had no damage to the door or steering column, and there were no tools in the car.

The People also called Thomas DiFiore, an auto damage appraiser. Mr. DiFiore testified that he had been assessing damaged autos for approximately two and one-half years and that he had national and on the job training and refresher courses. Over defense counsel's objections, Mr. DiFiore was deemed an expert in determining the fair market value of vehicles. Mr. DiFiore stated that he observed photos of the Mustang, but that he never actually inspected the car and that he did not know the actual mileage. Mr. DiFiore estimated the value of the car at $4,950.00 but acknowledged that, if the mileage of the car was over 100,000 miles, $100.00 should be deducted. making the value of the car $4,850.00.

After the People rested, defense counsel made an application to strike the testimony of the expert because the expert never actually examined the vehicle. That application was denied. Defense counsel also moved to dismiss the grand larceny in the third degree count on the ground that the evidence did not support the People's claim that the car was worth more than $3,000.00 or the claim that the car was actually "taken" by petitioner. The Court did not dismiss it.

Defense counsel requested that the court charge the jury with attempted grand larceny and the lesser-included offenses as they related to the value of the car. The court denied this request, finding that it would not be reasonable for a jury to find that a car, valued by an expert at $4,950.00, was actually worth less than $3,000.00, a difference of over $1,950.00. The court also found that it would be unreasonable for a jury to find Officer Lyon's testimony credible to the extent that he said the defendant was in the car trying to start it, but find incredible the officer's testimony that the engine was actually running and that the car lurched

forward. The court found that there was no reasonable view of the evidence under which the jury could reach either one of those conclusions. Thus, the court denied the request to charge attempted grand larceny and the lesser included offenses. Defense counsel also claimed a violation of *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961), based on the People's failure to turn over pictures of the Mustang to defense counsel until two days before trial. The court found that the People did commit a discovery violation because they did not disclose pictures of the Mustang, even though defense counsel had asked for pictures of the car. However, the court found that the People's violation did not warrant any sanctions.

The jury found petitioner guilty on all charges.

### Procedural History

Petitioner appealed his conviction to the Appellate Division, Second Department, claiming that: (1) the evidence did not prove his guilt beyond a reasonable doubt because the evidence did not establish that the value of the Mustang was over $3,000.00; (2) the trial court's pre-trial ruling, pursuant to *People v. Sandoval,* 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), deprived him of a fair trial; (3) petitioner's sentences on other convictions should have been set to run concurrently with each other and with the sentences in this case; (4) the trial court erred when it refused to charge lesser-included offenses; and (5) the trial court erred when, having found a *Rosario* violation, the court refused to order any sanctions against the People. By order dated March 8, 1999, the Appellate Division affirmed the judgment of conviction, finding that the evidence was legally sufficient to establish that the value of the stolen Mustang was

over $3,000.00 and that, although the People erred in failing to disclose photographs of the stolen car in a more timely manner, exclusion of all the evidence related to the car was not warranted because the People did not act in bad faith. The court also found that petitioner's sentence was not excessive and that all of his other claims were without merit. *People v. Rattray,* 259 A.D.2d 569, 687 N.Y.S.2d 640 (2d Dept. 1999).

Petitioner's counsel sought review of three claims in the New York Court of Appeals, namely, that: (1) the People failed to prove his guilt beyond a reasonable doubt because the expert who testified as to the value of the car had never actually inspected it; (2) the Appellate Division erred when it determined that the People's *Rosario* violation did not warrant reversal, because turning over the pictures late precluded the petitioner from obtaining his own valuation of the car; and (3) the sentences on all of petitioner's convictions should be modified to run concurrently. By order dated June 15, 1999, the New York Court of Appeals denied petitioner's application for leave to appeal. *People v. Rattray,* 93 N.Y.2d 977, 695 N.Y.S.2d 63, 716 N.E.2d 1108 (1999).

On February 9, 2000, petitioner moved to vacate his judgment of conviction, pursuant to CPL § 440.10, in Supreme Court, Queens County. He claimed that he was denied effective assistance of trial counsel for counsel's failure to: (1) object to "prejudicial hearsay" testimony given by Officer Lyons, Mr. DiFiore, and Mary Murphy; (2) request a "missing witness" instruction; (3) object to the prosecutor's closing arguments; and (4) ask the court to retain an expert for petitioner to value the car. Petitioner also claimed that the trial court improperly instructed the jury as to the "taking" element of grand larceny; that the Court's denial of a lesser-included of-

fense charge was erroneous; and, finally, that none of his claims should be procedurally barred because petitioner could not have raised them without the documentation he received while preparing the Section 440.10 motion; he also argued that the ineffective assistance of counsel claim is a "self-standing right and is not apparent from the record and record trial transcripts."

On April 5, 2000, the Court denied petitioner's motion, ruling that all of petitioner's claims were procedurally defaulted because they were evident on the record and should have been raised on direct appeal. As to the ineffective assistance of trial counsel claim, the court also noted, on the merits, that petitioner's trial counsel was an experienced attorney who conducted a vigorous and skillful defense under the circumstances. As to the jury instruction, the court noted, on the merits, that the instruction on the grand larceny charge properly followed New York law. Petitioner's application for leave to appeal the denial of his Section 440.10 motion was denied on August 9, 2000.

Petitioner filed this petition on May 9, 2000 raising the following claims: (1) the judgment was against the weight of the evidence, because the "value" element of the grand larceny charge was established by hearsay and the jury charge on the "taking" element of grand larceny was erroneous; (2) trial counsel was ineffective for failure to request a "missing witness" instruction and failure to raise objections to preserve issues for appeal; (3) the People's use of inadmissible hearsay denied petitioner his confrontation rights under the Sixth Amendment because trial counsel failed to request a "missing witness" charge and the sole police officer's testimony was not corroborated; and (4) the trial court's instruction on grand larceny shifted the burden of proof because it did not

include the element of "taking and carrying away."

### *Standard of Review*

Petitioner filed this petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, which mandates deference to state court decisions by federal habeas corpus courts. Under 28 U.S.C. § 2254:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a State court shall be presumed to be correct. The applicant bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established Supreme Court precedent if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405–06, 120 S.Ct. 1495. The

court further stated that a state court decision is "an unreasonable application of" clearly established Supreme Court precedent if, from an objective standpoint, the state court applied Supreme Court precedent unreasonably, not simply incorrectly or erroneously. *Id.* at 411, 120 S.Ct. 1495. The Court of Appeals for the Second Circuit has held that "some increment of incorrectness beyond error is required...the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Sellan v. Kuhlman,* 261 F.3d 303, 315 (2d Cir. 2001) (*quoting Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000)).

### Sufficiency of the Evidence/Erroneous Jury Instruction

Petitioner makes interrelated claims in points one and four of his petition concerning the failure to prove the elements of grand larceny in the third degree at trial. First, petitioner claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt because there was insufficient evidence before the jury to determine that the value of the stolen car was over $3,000.00 and insufficient evidence before the jury from which it could find that he actually exercised "dominion and control" over the car. Next, petitioner argues that, because the elements of grand larceny in the third degree were not proven at trial, the trial court erred when it did not charge the lesser-included offenses of attempted grand larceny and grand larceny in the fourth degree. Petitioner also claims that the jury charge on the "taking" element of grand larceny was incorrect in that it required only that the jury find that petitioner "activated" the car, that the engine was turned on and running, in order to satisfy the element of "taking." This, petitioner claims, relieved the People of

their burden of proving every element of the offense beyond a reasonable doubt.

First, as to the claim that the evidence was insufficient to establish the value of the stolen Mustang, the Appellate Division found, on petitioner's direct appeal, that "the evidence adduced at trial included proof that a 1988 Mustang GT was in perfect condition when the driver left it, approximately three hours prior to the theft. Five photographs of the Mustang were submitted into evidence. Further, an expert witness testified that the Mustang had a fair market value of $4850.00." *People v. Rattray,* 259 A.D.2d 569, 687 N.Y.S.2d 640. Thus, petitioner must establish that the Appellate Division's decision that the evidence was sufficient to show that the value of the Mustang was over $3,000.00 was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.

 A petitioner is entitled to habeas corpus relief if, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This standard must be applied with explicit reference to the substantive elements of the criminal offense, as defined by state law. *See id.* at 324 n. 16, 99 S.Ct. 2781. Under New York law, a person is guilty of grand larceny in the third degree if he steals property the value of which exceeds three thousand dollars. N.Y. Penal Law § 155.35. At petitioner's trial, Mary Murphy, the person who borrowed the car from her brother-in-law and drove it only three hours before petitioner broke into it, testified that the car was in excellent condition. The jury was shown pictures of the car and an expert testified that, in his opinion, the wholesale value of the car was

$4950.00, less $100.00 if the mileage was over 100,000 miles. Thus, the Appellate Division's decision that petitioner's claim that a rational jury could not find him guilty of stealing property with a value of more than $3,000.00 lacked merit, was not contrary to nor did it involve an unreasonable application of, the Supreme Court's *Jackson* decision.

■ As to the "taking" evidence and jury charge, under New York law, a person commits the crime of larceny when "with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from the owner thereof." N.Y. Penal Law § 155.05. "Taking" includes exercising dominion and control over the property for a period of time, however temporary, in a manner wholly inconsistent with the owners' continued rights. *See* N.Y. Penal Law § 155.00; *People v. Jennings,* 69 N.Y.2d 103, 118, 512 N.Y.S.2d 652, 504 N.E.2d 1079 (1986). Dominion and control of the property, even for a moment, are the paramount elements of a taking. For example, a person may be found guilty of larceny "when he sits behind the wheel of a parked car, starts the engine, and is seemingly about to drive away, even if there has been no movement of the car." *People v. Alamo,* 34 N.Y.2d 453, 358 N.Y.S.2d 375, 315 N.E.2d 446 (1974). This is so because a car is itself an instrument of transportation and when activated becomes within the total possession and control of the operator. *Id.* Furthermore, the "owner," for purposes of the statute, only need be a person who has a right to possession of the property, however limited or contingent, which is superior to the purported thief. N.Y. Penal Law § 150.00(5). *See People v. Hutchinson,* 56 N.Y.2d 868, 453 N.Y.S.2d 394, 438 N.E.2d 1109 (1982).

■ There was undisputed testimony at trial from one of the arresting police officers that he heard the engine of a car start and saw the Mustang lurch forward just before finding petitioner lying on the front seat of the car with the steering column opened up and with an assortment of tools beside him. Thus, there was evidence before the jury that, if they found the testimony credible, could establish that petitioner started the car. Therefore, petitioner's claim that a rational jury could not have found that he took control of the car, for even a moment, is without merit.

■ As to the claim that the court should have charged the lesser-included offenses, respondent correctly argues that this does not raise an issue of clearly established federal law as determined by the Supreme Court. The Supreme Court has held that Due Process requires a trial court to submit lesser-included offenses to the jury in capital cases. *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). However, the Court has expressly declined to consider whether such a requirement would apply in a non-capital case. *Id.* at 638 n. 14, 100 S.Ct. 2382. As a result, the Court of Appeals for the Second Circuit has concluded that a decision interpreting the Constitution to require the submission of instructions on lesser included offenses in non-capital cases would create a new rule of constitutional law and, therefore, that the issue is precluded from the lower courts' consideration by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See Jones v. Hoffman,* 86 F.3d 46, 48 (2d Cir. 1996). Similarly,since the creation of any new rule of constitutional law would not be a rule "clearly established" by the Supreme Court, the standard for habeas corpus relief cannot be met.

■ Finally, as to the claim that the trial court gave an erroneous instruction

regarding the element of "taking" with respect to the charge of grand larceny in the third degree, the trial court held, in deciding petitioner's Section 440.10 motion, that the claim was procedurally barred, because it could have been raised on direct appeal, but petitioner failed to do so. Thus, this court is barred from considering that claim unless the petitioner can show cause for his failure to bring the claim at the appropriate time and actual prejudice as a result of the alleged violation of federal law or a fundamental miscarriage of justice from this court's failure to hear the issue. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Epps v. Commissioner*, 13 F.3d 615 (2d Cir.), *cert. denied*, 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). Petitioner has not done so. Petitioner's counsel raised an objection to this charge during the trial, and it was on the record for petitioner to raise on appeal. Moreover, the instruction given was in keeping with New York law, as described above. Thus, petitioner cannot show cause for his default or prejudice from the alleged violation.

### Ineffective Assistance of Trial Counsel

Petitioner also makes interrelated claims, in points two and three of his petition, concerning his trial counsel's failure to object to "prejudicial hearsay" evidence and his failure to request a "missing witness" jury charge.

█ Petitioner presented his ineffectiveness of counsel claims in his Section 440.10 motion. The court ruled that:

> In the case at bar, the actions or inactions of counsel upon which the defendant rests his ineffectiveness claim are evident on the record of the trial. Nonetheless, the defendant did not raise ineffectiveness of counsel on direct appeal from the judgment, and therefore

his present claim is procedurally barred (CPL 440.10[2][c] ).

The court then stated, "[I]n any event, the defendant's claims are entirely without merit. Defense counsel, an experienced criminal attorney, conducted a vigorous and skillful defense under the circumstances. His arguments were strong and cogent, his questioning was probing and effective, and his objections were timely. Plainly, counsel afforded the defendant meaningful representation." The court similarly stated that the jury instruction was in accordance with New York law. It is well settled that where a state court decision states that a claim is procedurally barred, and then rules "in any event" on the merits, the claim is procedurally barred. *Harris v. Reed*, 489 U.S. 255, 264 n. 19, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Thus, petitioner's claims are procedurally barred from federal habeas corpus review unless petitioner can establish cause for his default and prejudice therefrom, or a fundamental miscarriage of justice resulting from the claimed error. *See Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546; *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Epps*, 13 F.3d 615. Petitioner has not shown any cause for his failure to make these claims on direct appeal, nor any prejudice or a fundamental miscarriage of justice.

The court notes that the Supreme Court recently held, in *Massaro v. United States*, —— U.S. ——, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), that a defendant challenging a federal conviction under 28 U.S.C. § 2255 could raise an ineffective assistance of counsel claim in a collateral proceeding even though the defendant could have, but did not, raise that claim on direct appeal. It is unclear whether, and to what extent, *Massaro* will have an impact on ineffective

assistance of counsel claims in challenges to state court convictions under 28 U.S.C. § 2254. The Supreme Court in *Massaro* noted with approval that many state courts have adopted the same doctrine that the Court was adopting, but that other states have not; and the Court gave no indication that the procedural bar doctrine would not continue to apply to Section 2254 cases involving ineffectiveness claims like the one presented here.

However, if, because of *Massaro*, there were no procedural bar to habeas corpus review of an ineffective assistance of counsel claim, then this court can review the claim, giving deference to the alternative finding made on the merits by the state court.

In order to prevail on an ineffective assistance of trial counsel claim, petitioner must show that counsel's performance fell below the objective standards of reasonableness dictated by prevailing professional norms and that there was a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Petitioner has not shown that trial counsel's performance was deficient.

█ Although the trial court expressly relied on the procedural bar when it denied his Section 440.10 motion, the court also noted, on the merits, that petitioner's ineffectiveness claims were without merit because, as noted earlier, "defense counsel, an experienced criminal attorney, conducted a vigorous and skillful defense under the circumstances. His arguments were strong and cogent, his questioning was probing and effective, and his objections were timely. Plainly, counsel afforded the defendant meaningful representation." These findings are supported in the trial record. Petitioner's blanket assertions that all of the witnesses testified to "hearsay," without providing any support in the record, does not establish that his trial counsel acted below the standard of prevailing professional norms. Among other things, trial counsel moved to strike the testimony of the expert witness because he was not basing his opinion on an actual examination of the Mustang, moved to have the court charge lesser included offenses, made several objections on hearsay grounds and even made one of the objections that petitioner complains here that he did not make. (Defense counsel objected to Officer Lyon's testimony concerning the "radio run" that he and his partner received. The court overruled the objection finding that the testimony explained why the officers took the actions that they subsequently took.) Similarly, petitioner has not shown that, had trial counsel requested the "missing witness" charge, it would have been given by the trial judge or that, even if the judge did agree to give the instruction, that the outcome of the trial would have been any different.[1] Thus, petitioner has not shown that trial counsel's performance was deficient for not requesting this charge, nor has he shown, in light of the totality of evidence presented against petitioner at trial, that, had the charge been given, the outcome of the trial would have been different. Certainly, petitioner cannot show that the state court's rejection of his ineffectiveness claims violated clearly established federal law.

### Conclusion

For the reasons stated above, the petition for a writ of habeas corpus is denied.

---

1. Officer Lyon's partner, Officer Tompkins, testified at the *Wade–Huntley* hearing prior to petitioner's trial. His testimony was the same, in all relevant respects, as that of Officer Lyons at trial.

As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**