**Joseph FAMA, Petitioner–Appellant,**

v.

**COMMISSIONER OF CORRECTIONAL SERVICES, Respondent–Appellee.**

No. 99–2586.

United States Court of Appeals,
Second Circuit.

Argued Oct. 3, 2000.

Decided Dec. 21, 2000.

Perry S. Reich, Schapiro & Reich, Lindenhurst, NY, for appellant.

Leonard Joblove, for Charles J. Hynes, District Attorney, Kings County, N.Y. (Monique Ferrell, on the brief), for appellee.

Before: McLAUGHLIN, CALABRESI, SOTOMAYOR, Circuit Judges.

CALABRESI, Circuit Judge:

Petitioner Joseph Fama, a New York State prisoner convicted of, among other things, murder in the second degree, New York Penal Law § 125.25[2], and riot in the first degree, New York Penal Law § 240.06, sought *habeas corpus* pursuant to 28 U.S.C. § 2254. In his *habeas* petition, Fama alleged, *inter alia,* that the State had produced insufficient evidence upon which a rational factfinder could conclude that he committed second-degree murder evincing depraved indifference to human life and that he was denied a fair trial due to publicity and juror intimidation. The district court (Johnson, *J.*) denied the petition, ruling that the insufficiency of the evidence claim had not been exhausted and that both that claim and the fair trial claim were procedurally barred. In addition, it denied Fama's motion to amend his petition and his motion for a certificate of appealability.

We granted a certificate of appealability as to the following issues: (1) whether "the evidence of 'depraved indifference' murder was legally insufficient;" (2) whether Fama "was denied a fair trial due to publicity and juror intimidation;" (3) whether "the district court correctly denied appellant's motion to amend on the ground of untimeliness;" and (4) whether "the district court correctly ruled that the claims appellant raised on direct appeal are procedurally barred." Although we find that the district court erred in its determinations of non-exhaustion and procedural bar and that it incorrectly denied Fama's motion to amend his petition on the ground of untimeliness, upon consideration of the merits of petitioner's claims, we affirm the judgment of the district court.

## I. STATE PROCEEDINGS

Fama's convictions arise out of the part that he played in a racial incident in Brooklyn in 1989. The testimony at trial showed that on August 23, 1989, a rumor spread in the predominantly white neighborhood of Bensonhurst that a young white woman had invited African American and Latino men to her birthday party. The young men of the neighborhood gathered near her home looking for "trouble ." Four young black men not from the area,

including Yusuf Hawkins,[1] by chance arrived at that very place on their way to see a used car that was for sale. They were accosted by the mob, separated from each other, and threatened. Hawkins was shot and subsequently died in the hospital during surgery.

The prosecution's case at trial placed Fama at the scene, described him as begging another member of the crowd to give him a gun so that he could "just . . . shoot one of them," and sought to show that he shot Hawkins. Two pieces of evidence are specifically relevant to this appeal. First, Robert Russo, a prisoner who was a frequent police informer, testified that Fama had confessed to him while in jail awaiting trial. Fama challenged, then and now, the veracity of Russo's testimony. And second, Franklin Tighe, a young man also from Bensonhurst, stated that he had seen Fama shoot Hawkins (this testimony was supported by another Bensonhurst local who testified to Tighe's excited utterance about Fama shooting Hawkins).

Much evidence was presented by both sides regarding Tighe's poor state of mental health, and in particular, his tenuous grasp on reality. In a post-trial motion (before the jury retired), Fama argued that after Tighe left the witness stand, he voluntarily appeared at defense counsel's office and recanted his entire testimony on videotape. The trial judge, nonetheless, denied Fama's motion to reopen the case and place Tighe back on the witness stand for further cross-examination.

The state court charged the jury, in the alternative, on two counts of murder in the second degree—intentional murder and depraved indifference murder. *See* New York Penal Law § 125.25. The jury returned a verdict acquitting Fama of the former but convicting him of the latter. It also convicted him on a variety of other counts that are not directly related to this appeal.[2]

Fama appealed to the Appellate Division, Second Department. That court unanimously affirmed the conviction. *See People v. Fama*, 212 A.D.2d 542, 622 N.Y.S.2d 732 (2d Dep't 1995). Fama then applied for leave to appeal to the New York Court of Appeals, and Judge Ciparick denied his application without prejudice to renewal upon substitution of counsel. *People v. Fama*, 86 N.Y.2d 734, 631 N.Y.S.2d 615, 655 N.E.2d 712 (N.Y.1995). Fama acquired new counsel, resubmitted his application, and, on December 11, 1995, Judge Ciparick denied leave to appeal. *People v. Fama*, 87 N.Y.2d 901, 641 N.Y.S.2d 230, 663 N.E.2d 1260 (N.Y.1995).

## II. PROCEEDINGS BELOW

On October 3, 1996, Fama petitioned for a writ of *habeas corpus* in the United States District Court for the Eastern District of New York. While that petition was pending, Fama's counsel requested, and the district court granted, an application to suspend the case in order to avoid, by a motion for a writ of error *coram nobis* in the Appellate Division, any defenses based on possible non-exhaustion of claims. The Appellate Division denied the writ on July 28, 1997. *People v. Fama*, 241 A.D.2d 555, 663 N.Y.S.2d 992 (2d Dep't 1997).

In addition, acting *pro se*, Fama wrote to the district court requesting that his *habeas* proceeding remain on the suspense calendar while he moved in state court to vacate the judgment of his conviction. Defense counsel did not adopt the letter, and the district court made no response to it. Fama nonetheless formally moved in state court to vacate the judgment, alleging, among other things, newly discovered evi-

---

1. There seems to be some discrepancy as to the spelling of "Yusuf" or "Yusef." We use the State's spelling of "Yusuf."

2. These were one count of riot in the first degree, three counts of menacing, three counts of unlawful imprisonment in the first degree, four counts of discrimination, and one count of criminal possession of a weapon in the third degree.

dence regarding the unreliability of the testimony of both Tighe and Russo. This motion was denied as was leave to appeal to the Appellate Division. Subsequently, on July 12, 1999, Fama moved to amend his *habeas* petition in the district court to add the claims that he had raised in his motion to vacate. He also requested an evidentiary hearing. The district court denied the hearing, denied leave to amend the petition, and, finally, denied the petition itself. *See Fama v. Commissioner of Corr. Servs.*, 69 F.Supp.2d 388 (E.D.N.Y. 1999).

In denying, as untimely, Fama's motion for leave to amend the petition, the district court relied on the one-year statute of limitations for *habeas* petitions established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244. The court held that one year should be the "relevant guideline in determining whether petitioner has exercised due diligence in pursuing the additional claims." *Id.* at 393; *see* 28 U.S.C. § 2244(d)(1)(D) (imposing one-year statute of limitations on filing of petitions from latest of several dates, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). Finding that the evidence of the unreliability of both Tighe's and Russo's testimony had been known for several years prior to the motion to amend, the court concluded that the application was untimely.[3]

In denying the petition for *habeas corpus*, the district court found that most of Fama's claims, including his claim regarding the sufficiency of the evidence on depraved indifference, were not exhausted. It also held that both the sufficiency of the evidence claim and the fair trial claim were procedurally barred. The court reached the merits on two claims that are not

before us on this appeal and found them to be without substance. *See Fama*, 69 F.Supp.2d at 396–97.

As stated above, this court then granted Fama's motion for a certificate of appealability to determine whether: (1) the evidence of depraved indifference murder was legally sufficient; (2) Fama was denied a fair trial because of publicity and juror intimidation; (3) the district court erred when it rejected, on the ground of untimeliness, appellant's motion to amend; and (4) the district court correctly ruled that the claims appellant raised on direct appeal are procedurally barred.

## III. DISCUSSION

■ We review the district court's denial of the petition *de novo*. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir.1997). We review the denial of leave to amend for abuse of discretion, *see Peterson v. Insurance Co. of North America*, 40 F.3d 26, 31 (2d Cir.1994), but "[i]f that denial was based on a legal interpretation ... we review the decision *de novo*." *Malesko v. Correctional Servs. Corp.*, 229 F.3d 374, 383 (2d Cir.2000).

### A. *Exhaustion of the Insufficiency of the Evidence Claim*

■ Prior to bringing a petition for *habeas corpus* pursuant to 28 U.S.C. § 2254, petitioner must exhaust the remedies available in state court or demonstrate that "there is an absence of available State corrective process [or] [that] circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To have exhausted claims in state court, petitioner must have "fairly presented" each federal claim to the highest state court. *Picard v.*

---

**3.** The district court found that the third piece of new evidence Fama tried to introduce-a letter allegedly showing that the government had promised a second jailhouse informant a benefit for his testimony-did not "even colorably support reversal of his conviction." 69

F.Supp.2d at 394. Because the court did not dispose of that aspect of the petition on grounds of untimeliness, and because the certified question on appeal concerned the timeliness issue only, we do not review the district court's decision regarding that evidence.

*Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

The district court in the instant case erroneously concluded that Fama had not exhausted his claim that the evidence was insufficient to support a conviction on depraved indifference murder. On the basis of the State's persuasive, but ultimately incorrect, arguments, it concluded that the only insufficiency of the evidence claim that Fama had made to the Appellate Division in his direct appeal concerned the evidence proving his identity. "The claim of legally insufficient evidence, although included in the application for leave to appeal to the New York Court of Appeals, had not been presented to the Appellate Division, Second Department, to the extent it alleged insufficiency for reasons other than that the evidence did not prove petitioner's identity as the perpetrator of the crime beyond a reasonable doubt." *Fama,* 69 F.Supp.2d at 392.

■ Fama's brief to the Appellate Division compels us to find that this conclusion cannot stand. It is true that under the heading "The Evidence Was Insufficient," the discussion primarily concerned Fama's identity. However, Fama also mentioned the depraved indifference claim in that section when he stated, "In this case the evidence was so inconsistent, so non-conclusive and so conflicting, that the conclusion that Joseph Fama either shout [sic] Yusef Hawkins *or acted with a depraved mind sufficient to convict him of the second count, cannot be reached as a matter of law*" (emphasis added). More important, under the heading "After the Jury Began Deliberating the Court Altered Its Charge and Gave the Jury Instructions Which Were Clearly Wrong and Unlawful," Fama discussed, at some length, the sufficiency of the evidence relating to the depraved indifference count. He began that discussion, "We also submit that not only did the Court wrongfully alter its charge after defense counsel had relied on the charge when he summed up, but *there was not even any basis to support the Depraved Murder conviction*" (emphasis added). Despite the confusing section appellations, and the overlapping arguments regarding the insufficiency of the depraved indifference evidence and the allegedly incorrect depraved indifference jury charge, the fact is that Fama argued the issue, cited cases, applied the law to the facts, and "fairly presented" the issue to the state court. We find, therefore, that Fama exhausted his claim that the evidence of depraved indifference murder was insufficient.

### B. Procedural Bar

■ Federal courts may not review state court decisions that rest on an adequate and independent state procedural default unless petitioner can show both cause and prejudice or a fundamental miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. 722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). In order for federal review to be barred, "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Harris,* 489 U.S. at 261–62, 109 S.Ct. 1038 (internal quotation marks and citation omitted). Because it can be "difficult to determine if the state law discussion is truly an independent basis for decision or merely a passing reference," *Coleman,* 501 U.S. at 732, 111 S.Ct. 2546, such reliance on state law must be "clear from the face of the opinion." *Id.* at 735, 111 S.Ct. 2546 (internal quotation marks omitted).

In *Harris,* the Supreme Court held that federal *habeas* review of a state court's rejection of federal claims is allowed where the state court has not "clearly and expressly state[d] that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. 1038 (internal quotation marks and citation omitted). In *Coleman,* however, the Court "stated that *Harris* did not apply to affirmances without opinion unless there is 'good reason to question

whether there is an independent and adequate state ground for the decision.'" *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir.1993) (quoting *Coleman*, 501 U.S. at 739, 111 S.Ct. 2546). The Court in *Coleman* found no "good reason" to question the state ground since the State's appellate brief moved to dismiss defendant's appeal on the *sole* ground of a state procedural bar. As a result, it was clear that the state court decision did not "fairly appear to rest primarily on federal law or to be interwoven with such law." *Id.* at 740, 111 S.Ct. 2546. The *Coleman* Court nonetheless also reaffirmed the *Harris* presumption that absent a plain statement we should treat the state court as not relying on state law: "The . . . presumption works because in the majority of cases in which a state court decision fairly appears to rest primarily on federal law or to be interwoven with such law, and the state court does not plainly state that it is relying on an independent and adequate state ground, the state court decision did not in fact rest on an independent and adequate state ground." 501 U.S. at 737, 111 S.Ct. 2546. Relying on *Coleman's* exception to the *Harris* presumption (and indeed expanding on it) rather than on *Coleman's* general reaffirmation of *Harris*, we subsequently held in *Quirama* that where a state court issued no opinion and where *both* procedural and substantive arguments were made in the appellate briefs, we would assume that the state court based its decision on state procedural grounds. *See Quirama*, 983 F.2d at 14.

The scope of *Quirama* has been much debated in this circuit. In particular, the question of whether *Quirama* applies only where a state court issues no opinion or also when state courts treat the state and federal issues in a cursory fashion has been at issue in several of our cases. Thus, where a state court opined that a

claim was "either unpreserved for appellate review or without merit," we have at times, in passing, said that "[t]he state court did not clearly and expressly state whether it had examined the merits of the missing witness claim or had relied on a procedural default . . . [and so the] claim is properly subject to federal *habeas corpus* review." *Reid v. Senkowski*, 961 F.2d 374, 377 (2d Cir.1992); *see also Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir.1998) (rejecting a procedural bar where a state lower court opinion reached the merits and the Appellate Division used the language "meritless or unpreserved"). And we have stated that "when, as here, an opinion is available[,][w]e are bound by the grounds stated in the opinion," and the assumption that the state court decision rested on procedural grounds is "inapplicable." *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997). We have further held that where a state court "set forth the factual predicate for a finding of procedural default, [but] never actually stated that the issue was not preserved," the claim was amenable to federal review. *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir.2000). But we have also, and expressly, stated that whether a state determination that a claim is "either unpreserved or without merit" serves as a procedural default is an open question in this circuit that "has yet to be determined." *Hayes v. Coombe*, 142 F.3d 517, 519 (2d Cir.1998).

■ We today decline to extend *Quirama* to those cases in which an opinion of the state court speaks, however cursorily, to the question of whether the state or federal ground was the basis for decision. And we explicitly hold that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved for appellate review or without merit," the validity of the claim is preserved and is subject to federal review.[4]

---

4. We note that we have held that where a state court says that a claim is "not preserved for appellate review" and then ruled "in any event" on the merits, such a claim is not

preserved. *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996); *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Our holding today is completely consistent with

When it uses such language, the state court has not adequately indicated that its judgment rests on a state procedural bar, *see Harris*, 489 U.S. at 263, 109 S.Ct. 1038, and its reliance on local law is not clear from the face of the court's opinion. *See Coleman*, 501 U.S. at 735, 111 S.Ct. 2546.

In Fama's direct appeal, the Appellate Division addressed some of his claims expressly and stated that the others were "either unpreserved for appellate review or without merit." *People v. Fama*, 212 A.D.2d 542, 622 N.Y.S.2d 732, 734 (2d Dep't 1995). With regard to the insufficient evidence claim, the Appellate Division found that Fama had inadequately preserved for appellate review "his claims that the proof of *identification* was legally insufficient to establish his guilt of depraved indifference murder beyond a reasonable doubt." *Id.* at 733 (emphasis added). It said nothing directly with respect to Fama's claim that the evidence was insufficient to establish guilt of murder by *depraved indifference* of human life, as distinct from *intentional* murder, despite the fact that Fama raised precisely this claim on appeal to that court. *See supra* at 808–09. The court did go on to say, however, that the remaining claims were "either unpreserved for appellate review or without merit." We are bound to conclude that Fama's depraved indifference claim was included in that catch-all. Since (as we have just affirmed) that phrase does not suffice as a plain statement of an adequate and independent state ground under *Harris* and *Coleman*, Fama's claim that the State's evidence of depraved indifference murder was insufficient is amenable to federal *habeas* review.

Similarly, Fama's claim that he was denied a fair trial as a result of publicity and juror intimidation is also preserved. Fama raised the issue in his brief to the Appellate Division. Again, that court no-

where addressed the claim specifically, and so it too must constitute one of the claims included in the catch-all phrase that the remaining claims were either unpreserved or without merit. Consequently, the district court erred when it found this claim to be procedurally barred.[5]

### C. Insufficiency of the Evidence

■ The Supreme Court has held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254—if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to *habeas corpus* relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the matter, we must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor. *See id.* at 319, 99 S.Ct. 2781. Moreover, petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence. *See United States v. Soto*, 716 F.2d 989, 991 (2d Cir. 1983).

■ When it considers the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999), *cert. denied* 528 U.S. 1170, 120 S.Ct. 1196, 145 L.Ed.2d 1100 (2000). In this case, the state law at issue is New York Penal Law § 125.25. Fama was charged with murder in the second degree both pursuant to § 125.25[1], which states that a person is guilty of murder when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person," and pursuant to

those cases, and we do not intend to cast any doubt on their continued validity.

**5.** Because we find the merits of the case easily resolved on the record before us, we see no reason to remand to the district court for further proceedings.

§ 125.25[2], depraved indifference murder. Section 125.25[2] states: "A person is guilty of murder in the second degree when: . . . Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." Under the same code, § 15.05[3], "recklessly" is defined, in pertinent part, in the following way:

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Fama claims that the two counts are inconsistent, and that the State's entire case went to proving an intentional murder rather than a depraved indifference murder. Because, he claims, the evidence showed that Hawkins had been *intentionally killed* either by Fama or by someone other than Fama, there was no basis in the record for finding Fama guilty of depraved indifference murder.

Fama is correct that under New York law, intentional murder and depraved indifference murder are mutually exclusive. While § 125.25[1] requires a *mens rea* of intent, subsection [2] requires a *mens rea* of recklessness. What distinguishes depraved indifference murder from intentional murder is this difference in the requisite *mens rea*. *See People v. Register*, 60 N.Y.2d 270, 469 N.Y.S.2d 599, 457 N.E.2d 704, 708 (N.Y.1983) (depraved mind murder requires "recklessness plus aggravating circumstances"). "One who acts intentionally in shooting a person to death— that is, with the conscious objective of bringing about that result (Penal Law § 15.05[1])—cannot at the same time act

recklessly—that is, with conscious disregard of a substantial and unjustifiable risk that such a result will occur (Penal Law § 15.05[3] ). The act is either intended or not intended; it cannot simultaneously be both." *People v. Gallagher*, 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909, 910 (N.Y.1987). Nevertheless, intentional and depraved murder counts may be presented to the jury in the alternative so long as there is evidence to support both theories. *See id.* at 909–10.

Fama contends, however, that the State presented no evidence to support a charge of murder on a theory of depraved indifference. He likens his case to *People v. Gonzalez*, 160 A.D.2d 502, 554 N.Y.S.2d 506 (1st Dep't 1990), where the Appellate Division found that all of the evidence pointed to an intentional murder, and that, as a result, there was not sufficient evidence to convict him on depraved indifference. We disagree.

We hold that, making all inferences in the prosecution's favor, it was possible for a rational factfinder to convict Fama on a theory of depraved indifference. The prosecution's evidence showed that Fama was part of a mob intent on intimidating and harming the black youths who had inadvertently entered their predominantly white neighborhood. It showed also that Fama requested a gun from a friend, stating, "Babe, please, I just want to shoot one of them." Other members of the mob discussed wanting to "club" and "shoot" Hawkins and his friends. Witnesses described seeing Fama shoot Hawkins and seeing Hawkins fall to the ground wounded.

This evidence demonstrates that Fama intended to *shoot* Hawkins, but it does not necessarily show that he intended to *kill* him. Unless it was persuaded that Fama's intention was to take Hawkins' life, a jury could have concluded that Fama intended to cause bodily harm to Hawkins with a reckless disregard of the ultimate result of that harm. In other words, a jury could have found, because Fama meant to cause

bodily harm with indifference to the effects of those injuries, that he evinced a depraved indifference to human life, and hence that he had the requisite *mens rea* of recklessness. Considering the inferences that must be made in favor of the prosecution and Fama's very heavy burden of demonstrating insufficiency of the evidence on *habeas* under *Jackson*, we are not convinced that it was irrational to have found that Fama evinced a depraved indifference to human life. *See People v. Trappier*, 87 N.Y.2d 55, 637 N.Y.S.2d 352, 660 N.E.2d 1131, 1133–34 (N.Y.1995) ("Defendant ... could have fired at [the victim] with the intent to cause him only serious and protracted disfigurement and simultaneously consciously disregarded a substantial and unjustifiable risk that, by so doing, he would create a grave risk of a more severe outcome, [the victim's] death."); *People v. Tankleff*, 199 A.D.2d 550, 606 N.Y.S.2d 707, 710–11 (2d Dep't 1993) ("We agree with the defendant to the extent that he argues that the evidence presented by the prosecution is far more consistent with the conclusion that he intended to kill his mother than with the jury's conclusion that he killed her recklessly. However, we are not free to vacate a conviction based on a finding of recklessness merely because we ourselves consider that a finding of intent would have been more plausible in light of the evidence.... The jury's conclusion that the defendant lacked a conscious objective to kill while he was beating his mother to death is not irrational, and should be upheld."). Accordingly, *habeas* relief is not warranted on this ground.[6]

### D. Fair Trial

■ A criminal defendant has the right to a fair trial not conducted in a "carnival atmosphere," *Sheppard v. Max-*

*well*, 384 U.S. 333, 358, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966), not overwhelmed by press coverage, *Murphy v. Florida*, 421 U.S. 794, 798, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), and not dominated by a "wave of public passion." *Irvin v. Dowd*, 366 U.S. 717, 728, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). On § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial. *See Wheel v. Robinson*, 34 F.3d 60, 65 (2d Cir.1994). "[T]he Supreme Court has made it clear that 'the trial court's findings of impartiality [may] be overturned only for manifest error.'" *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir.1995) (quoting *Patton v. Yount*, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

■ Fama claims that his case "was deluged by a tidal wave of prejudicial publicity." He has not, however, provided sufficient evidence either of the existence of such publicity or of the existence of a reasonable likelihood that such publicity prevented him from receiving a fair trial. *See United States v. Maldonado–Rivera*, 922 F.2d 934, 966–67 (2d Cir.1990) (citing *Sheppard*, 384 U.S. at 363, 86 S.Ct. 1507). The only evidence he adduces of "prejudicial publicity," other than unsupported allegations about the environment outside the courtroom, is that the prosecution's key witness (the woman whose birthday party had triggered the violence) appeared on the television program "60 Minutes." This is clearly insufficient to meet Fama's burden.

Evidence of jury intimidation is similarly lacking. The handling of possible juror partiality or misconduct "is entrusted to the sound discretion of the trial court." *United States v. Thai*, 29 F.3d 785, 803 (2d Cir.1994). And the incidents Fama points

---

6. It is thus completely consistent to have acquitted Fama of intentional murder, which required the intention to kill, while convicting him of depraved indifference murder, which required an intention to harm with reckless indifference as to whether that recklessness might kill. In this respect, we note that while

"one is presumed to intend the natural and probable consequences of one's acts," *United States v. Carboni*, 204 F.3d 39, 47 (2d Cir. 2000) (internal quotation marks omitted), that assumption means only that a jury may find the *mens rea* of intention in such a situation, not that it must.

to as evidence of such jury intimidation are inadequate.

■ First, Fama contends that, as a result of fright, the jury requested that it be allowed to ask questions of the court outside the presence of spectators. As respondent points out, however, the note that the jury sent to the judge requesting a private audience in no way indicates that this "fear," if it existed, was, in any way, prejudicial to Fama. The jurors' note said only, "We request a private audience with the Judge and the lawyers in order to ask specific questions.... There is a difference of opinion as to the meaning of this count ... and we feel extremely uncomfortable speaking in front of the public." Moreover, Fama's counsel did not at the time express any concern about the jurors' possible feelings of intimidation, and he did not ask the court to question them about the meaning of their note.

Second, Fama points to a threatening letter that the forewoman had received, and which Fama claims "scared [her] to death." But, as respondent again points out, that statement is taken out of context and actually refers to the forewoman's fear of appearing before the judge alone and not to any fright deriving from the alleged letter. In fact, when first asked if she had received a threatening letter the forewoman could not recall whether she had, and, upon remembering, she stated that she did not feel threatened by any such letter.

Third, Fama points out that a juror received threatening phone calls. But there is no indication that these calls were related to the case. Despite being given an opportunity to interview the other jurors about whether they had been affected by discussion of the phone calls, Fama's counsel declined to do so. Consequently, the case for intimidation is not substantiated on the record before us.[7]

■ Finally, Fama mentions an "outburst" made when the verdict came down in his co-defendant Mondello's case as evidence of the unfairness of Fama's own trial. That outburst might well be taken as generally indicative of the heightened tension that surrounded these cases. But, because Mondello's verdict came down *after* Fama's, it provides no evidence that Fama's jury was intimidated or even affected by the outburst. Nor is the outburst any indication of a general atmosphere surrounding the trials that would be enough to demonstrate a "reasonable likelihood" that Fama was denied a fair trial.

In sum, Fama has failed to point to any substantial evidence that would require a finding that he did not in fact receive a fair trial. It follows that *habeas* relief is not justified.

### E.  Motion to Amend

The district court determined that Fama's motion to amend his *habeas* petition was untimely. In doing so, it analogized timeliness for leave to amend a § 2254 petition to the AEDPA's statute of limitations that restricts the bringing of § 2254 petitions as an initial matter. That one-year limitation period, it stated, "even if not applicable by its terms to a motion to amend the petition, is certainly a relevant guideline in determining whether petitioner has exercised due diligence in pursuing the additional claims." *Fama*, 69 F.Supp.2d at 393. Since Fama's motion to amend was filed over two years after his initial petition, the district court denied the motion.

#### 1.  Rule 15(c)

The district court's analogy is not apt, however, for it conflicts with the applicable

---

7. Respondent contends that this incident is separate from Fama's fair trial claim and so not properly before us on appeal. Respondent's ill-conceived attempt to disaggregate the claim from its supporting evidence so as to limit our review to the certified questions is unavailing. The phone call issue is clearly part of the evidence Fama adduces to demonstrate that he did not receive a fair trial, and we consider it as such.

Rules of Civil Procedure. 28 U.S.C. § 2242 states that a petition for *habeas corpus* "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." And Rule 11 of the Rules Governing 2254 Cases provides that "[t]he Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under these rules." Rule 15, of the Federal Rules of Civil Procedure, governs amendments in civil actions. The purpose of Rule 15, moreover, "is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. This is demonstrated by the emphasis Rule 15 places on the permissive approach that the district courts are to take to amendment requests, no matter what their character may be." 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1471 (2d ed.1990) (2000 Supp.) (footnotes omitted).

■ Subsection (c) of Rule 15 governs motions to amend where (as here, given the AEDPA) the statute of limitations for the underlying cause of action has already run. That section provides in relevant part: "An amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."[8] In determining whether the claim arises out of the same conduct or occurrence, "[t]he pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims." *Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2d Cir.1998) (citations and internal quotation marks omitted). As a result, unless Rule 15(c) is inconsistent with the § 2254 Rules or with § 2254 itself in such a way as to overcome the general proposition that the Federal Rules of Civil Procedure

apply to *habeas* petitions and that the federal rules specifically concerning amendments govern amendments to these petitions, we must examine whether Fama's proposed amendment properly relates back to his original pleading.

We are aware of no such inconsistency. To be sure, there is, as the Third Circuit acknowledged in *United States v. Thomas*, 221 F.3d 430, 434 (3d Cir.2000), an "apparent inconsistency" between the AEDPA's one-year limitations period for *habeas* petitions and "the language and spirit of Rule 15(c):"

> On the one hand, district courts maintain a liberal policy in non-*habeas* civil proceedings of allowing amendments to correct a defective pleading or to amplify an insufficiently stated claim and relating those amendments back to the date of the original filing when the amendments might otherwise have been barred by the applicable statute of limitations. On the other hand, Congress clearly intended to limit collateral attacks upon judgments obtained in federal criminal cases, an intent evidenced by the AEDPA's limitations period for filing petitions of one year from the date on which the judgment of conviction becomes final.

*Thomas*, 221 F.3d at 434 (internal quotation marks omitted). Nonetheless, in the context of a § 2255 petition brought by a prisoner in federal custody, the Third Circuit determined that the seeming inconsistency is one of appearance alone. In fact, "[t]he one-year period of limitations contained in the AEDPA is a statute of limitations like any other statute of limitations in a civil proceeding." *Id.* at 436. And, *Thomas* therefore held that Rule 15(c) applies to § 2255 petitions. Other circuits have agreed. *See United States v. Pittman*, 209 F.3d 314, 318 (4th Cir.2000); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir.1999).

The reasoning of the *Thomas* court in the context of § 2255 petitions applies

---

**8.** Rule 15 provides for two other scenarios in which relation back can save an otherwise

time-barred amendment, but they are not relevant here.

equally to § 2254 petitions.[9] Sections 2254 and 2255 are generally seen as *in pari materia*. *See Reilly v. Warden*, 947 F.2d 43, 45 (2d Cir.1991) (" '[T]here can be no doubt that the grounds for relief under § 2255 are equivalent to those encompassed by § 2254, the general federal *habeas corpus* statute.' ") (quoting *Davis v. United States*, 417 U.S. 333, 344, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). And when Congress amended the *habeas* framework in the AEDPA in 1996, and added the one-year statute of limitation, it did so both as to § 2254 and as to § 2255. *See* 28 U.S.C. 2244(d)(1) ("A 1 year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court."); 28 U.S.C. § 2255 ("A 1 year period of limitation shall apply to a motion under this section."). We conclude that, with regard at least to the timeliness of motions for leave to amend, the two statutes remain equivalent, and hence that the cases applying Rule 15(c) to § 2255 petitions are persuasive in the § 2254 context. Accordingly, we hold that Rule 15(c) applies to § 2254 petitions for *habeas corpus*.

### 2. Fama's Amended Petition

Because Fama moved to amend his petition long after the one-year statute of limi-

tations had run, he was required to show that his amended petition relates back in accordance with Rule 15(c). His amendment includes two putatively new pieces of evidence in support of his claims that the testimony of Tighe and Russo was so unreliable as to require the court to grant his petition for *habeas corpus*. The first piece of allegedly new evidence is an affidavit by Tighe recanting his trial testimony identifying Fama as the shooter. The second is an affidavit by one Frank Albanese stating that Russo, the jailhouse informant, had admitted to Albanese that he had perjured himself.[10]

■ To simplify this case, we will assume *arguendo* that, pursuant to Rule 15(c), this evidence does relate back to Fama's original petition, and hence that amendment is permissible.[11] Even considering the affidavits, however, we remain unconvinced that *habeas* relief is justified. "Where the government was unaware of a witness' perjury, ... a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." *United States v. Gallego*, 191 F.3d 156, 162 (2d Cir.1999) (internal quota-

9. Indeed, we implied as much in *Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir.2000) (holding that "the 'relation back' doctrine is inapplicable when the initial *habeas* petition was dismissed, because there is no pleading to which to relate back"). Had the original petition not been dismissed, that statement implies, relation back might have applied.

10. In fact, as the district court correctly notes, neither of these pieces of evidence is as new as Fama alleges. Although Tighe's affidavit is new, the "recantation" had initially come to light even before the case was sent to the jury, and Fama had attempted to reopen the case in order to re-examine Tighe. Similarly, Albanese first apprised Fama of his "knowledge" in a letter written on February 27, 1995, *i.e.* before the original *habeas* petition was filed. That Albanese did not actually sign an affidavit until 1997 does not mean that the evidence was only newly discovered in 1997.

11. There is a difference of opinion in the circuits as to whether relation back for purposes of Rule 15(c) raises jurisdictional issues. *See Craycraft*, 167 F.3d at 457 (holding that, because the petitioner's proposed amendment did not relate back to his original petition, the district court lacked jurisdiction to hear the claim, and affirming the district court's dismissal of the claim on different grounds). *But cf. Thomas*, 221 F.3d 430 (not discussing jurisdiction); *Pittman*, 209 F.3d 314 (same). Even if it did raise jurisdictional questions, only statutory restrictions on our jurisdiction and not constitutional ones would be involved. And the Supreme Court has barred the assumption of "hypothetical jurisdiction" only where the potential lack of jurisdiction is a constitutional question. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

tion marks and citations omitted); *see Sanders v. Sullivan,* 863 F.2d 218, 226 (2d Cir.1988).

Neither affidavit Fama offers rises to the level of materiality required by our case law. Ample reasons for disbelieving both Tighe and Russo were given to the jury at trial, making it likely that even without their testimony Fama would have been convicted. Tighe's mental health history and unreliability were fully aired. Similarly, at trial, defense counsel brought out many reasons for the jury to disbelieve Russo—that he had committed crimes in which he misled "gullible" people, that he expected and received rewards as a result of his testimony in Fama's trial, and that he had closely followed the case in the newspapers and on television. In addition, the prosecution presented so much substantial evidence of Fama's guilt—beyond the testimony of Tighe and Russo—that the absence of their testimony was unlikely to have affected the trial's outcome.

## IV. CONCLUSION

We disagree with the court's determinations that Fama's claims were unexhausted and procedurally barred. In particular, we hold that when a state court finds that claims are either procedurally barred or meritless, the validity of those claims is preserved and they are amenable to federal review. Nonetheless, we find Fama's claims to be without merit. In addition, although we hold that Rule 15(c) of the Federal Rules of Civil Procedure applies to § 2254 petitions, and although we assume *arguendo* that the allegations in Fama's motion for leave to amend relate back to his original petition and hence that the amendment was permissible, we also find that the claims made in that amendment are meritless. Accordingly, we AFFIRM the judgment of the district court.