Terence RICE, Petitioner,

v.

Robert KUHLMANN, Respondent.

No. CV–97–7534(ERK).

United States District Court, E.D. New York.

April 30, 2002.

Jeffrey A. Rabin, Brooklyn, NY, for petitioner.

Terence Rice, Comstock, NY, pro se.

Michael Gore, Office of Dist. Atty., Brooklyn, NY, for respondent.

## MEMORANDUM AND ORDER

KORMAN, Chief Judge.

This is a motion pursuant to Fed. R.Civ.P. 60(b)(6) to vacate a judgment denying a petition for a writ of habeas corpus. The judgment was entered on August 17, 1999, after my late colleague, Judge Nickerson, filed a memorandum and order denying the petition. A certificate of appealability was denied by the Court of Appeals on August 21, 2000.

The instant motion was filed on November 21, 2001, and was reassigned to me after Judge Nickerson died. The basis of the motion is said to be a change in the law after the denial of the writ. In *Matarese v. LeFevre*, 801 F.2d 98 (2d Cir. 1986), the Court of Appeals held that "it [was] particularly appropriate for the district court to entertain a Rule 60(b)(6) motion on grounds of a retroactive change in the law in the context of a habeas corpus proceeding, in which '[c]onventional notions of finality of litigation have no place.'" Id. at 106, quoting *Sanders v. United States*, 373 U.S. 1, 8, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

The premise that conventional notions of finality of litigation have no place in habeas corpus cases was always a debatable one, at least where the petitioner was not alleging a constitutional violation that resulted in the conviction of a innocent person. See Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi L.Rev. 142, 146–51 (1970). Indeed, in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), Justice Powell, writing for the majority, observed·that "[r]esort to habeas corpus, especially for purposes other than to assure that no innocent person suffers an unconstitutional loss of liberty, results in intrusions on values important to our system of government. They include . . . 'the necessity of finality in criminal trials . . .'" *Id.* at 491, n. 31 (internal citations omitted). One of the many considerations favoring finality is the difficulty of a retrial years after the event if the conviction is set aside: "[A]lthough successful attack usually entitles the prisoner only to a retrial, a long delay makes this a matter of theory only." Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi L Rev. at 147. Another consideration is the difficultly in resolving the merits underlying the claim asserted in a stale habeas corpus petition. *Id.* As the Supreme Court observed in declining to apply *Batson* retroactively:

> Retroactive application would require trial courts to hold hearings, often years after the conviction became final, to determine whether the defendant's proof concerning the prosecutor's exercise of challenges established a prima facie case of discrimination. Where a defendant made out a prima facie case, the court then would be required to ask the prosecutor to explain his reasons for the challenges, a task that would be impossible in virtually every case since the prosecutor, relying on *Swain*, would have had no reason to think such an explanation would someday be necessary. Many final convictions therefore would be vacated, with retrial "hampered by problems of lost evidence, faulty memory, and missing witnesses."

*Allen v. Hardy*, 478 U.S. 255, 260, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) quoting *Solem v. Stumes*, 465 U.S. 638, 650, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984). These considerations are particularly compelling in this case where eleven years have passed since the commission of the crime of which petitioner was convicted.

The issue whether finality is irrelevant is no longer subject to debate. The one year statute of limitations for the filing of a habeas corpus petition, which Congress

recently enacted, 28 U.S.C. 2244(d)(1), plainly overrides the premise that considerations of finality are irrelevant. Indeed, the holding in *Matarese* is undermined further by the enactment of 28 U.S.C. 2254(d)(1) which precludes retroactive application of changes in the law made after the judgment of conviction was sustained on direct appeal. See also, *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, (1989) (applying a more stringent standard for recognizing changes in the law and "new rules" in light of the "interests of comity" present in federal habeas corpus proceedings).

The Supreme Court recently observed that "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). This restrictive standard should apply particularly to a motion pursuant to Rule 60(b)(6) to set aside a final judgment denying a habeas corpus case filed more than two years after the entry judgment denying the petition, over a year after the Court of Appeals denied a certificate of appealability and eleven years after the crime was committed. Indeed, where petitioner is alleging the same grounds for relief, as he argued in his initial petition, albeit supported with an argument of intervening change in the law, there are compelling reasons to treat it for what it is: a second successive petition for a writ of habeas corpus. Cf. *Rodriguez v. Mitchell*, 252 F.3d 191, 199 (2d Cir.2001)(Rule 60(b) motion relating "to the integrity of the federal habeas corpus proceeding, not to the integrity of state court trial" should not be considered a second petition.)

Petitioner here asks that Rule 60(b)(6) motion not be treated as a second petition, because it does not satisfy the conditions for such a petition. The Rule 60(b) motion fails, because it cannot be reconciled with the considerations of finality that are particularly applicable in habeas corpus cases, the restrictive standard applicable to Rule 60(b)(6) motions based on changes in intervening law and the underlying purpose of Rule 60(b) which is to provide relief when "appropriate to accomplish justice." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 at n. 2 (2d Cir.1977) (internal quotations and citations omitted).

█ Petitioner's Rule 60(b) motion is directed principally to Judge Nickerson's disposition of two of the grounds raised in his habeas corpus petition. The first relates to petitioner's claim that the trial judge improperly rejected his *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objection to the exercise of peremptory challenges by the Assistant District Attorney. In his brief in the Appellate Division, the District Attorney responded to this claim by arguing that it was procedurally forfeited and without merit. When it affirmed the judgment of conviction, the Appellate Division addressed a number of petition of petitioner's claims on the merits, the rest of the claims were rejected as "either unpreserved for appellate review or without merit." *People v. Rice*, 234 A.D.2d 570, 571, 652 N.Y.S.2d 55, (2d Dep't 1996). Because the District Attorney argued that at least two of those claims were procedurally forfeited, it is not possible to know whether it was the *Batson* claim that was rejected as unpreserved.

Judge Nickerson agreed that the Appellate Division "opinion ... left unclear whether petitioner's *Batson* claim was being dismissed on procedural grounds or being denied on the merits." Op. at 9. Nevertheless, because the District Attorney argued that the *Batson* claim was unpreserved, and because New York law only sparingly permits review of the mer-

its of claims not properly raised in the trial court, Judge Nickerson likened this case to one in which "an unexplained affirmance of a conviction in the face of arguments asserting a procedural bar is presumed to rest on state procedural grounds." *Id.* citing *Quirama v. Michele,* 983 F.2d 12, 14 (2d Cir.1993), and held that it was procedurally forfeited.

*Quirama v. Michele,* 983 F.2d 12 (2d Cir.1993) upon which Judge Nickerson relied plainly supported the result he reached. Indeed, this was arguably a stronger case than *Quirama* because the Appellate Division actually invoked a procedural bar. By contrast, *Quirama* involved a silent affirmance of conviction where the District Attorney argued both merits and a procedural default in responding to petitioner's claims. While petitioner correctly argues that *Quirama* can no longer be said to justify the procedural forfeiture of his *Batson* claim, his problem is that this was true at the time the petition was denied. Two cases, one of which was decided before *Quirama* make this clear. Specifically, in *Reid v. Senkowski,* 961 F.2d 374 (2d Cir.1992), decided a decade ago, the Court of Appeals addressed the issue in a case identical to this. There, as here, the Appellate Division had "summarily disposed of a number of Reid's challenges to his conviction, including the missing witness charge claim, as 'either unpreserved for appellate review or without merit.'" Id. at 377 (internal citation omitted). Because "[t]he state court did not clearly and expressly state whether it had examined the merits of the missing witness claim or had relied on a procedural default," the Second Circuit held that "the missing witness claim is properly subject to habeas corpus review." *Id. Quirama v. Michele* did not cite *Reid v. Senkowski.* Subsequently, in *Tankleff v. Senkowski,* 135 F.3d 235 (2d Cir.1998), decided only a year before the petition was denied here, the Second Circuit held that it may ad-

dress the merits of a claim relating to the petitioner's absence from a part of the proceedings, because the New York Court of Appeals had disposed of the claim (along with other remaining contentions) as meritless or unpreserved. *Id.* at 247. This disposition rendered it unclear whether the claim was rejected "because it was unpreserved or because it was deemed meritless as a matter of federal constitutional law." *Id.* at 247.

These holdings were reaffirmed in *Fama v. Comm'r of Corr. Serv's,* 235 F.3d 804, 810–812 (2d Cir.2000). The only basis for petitioner's change of law argument is dictum in *Hayes v. Coombe,* 142 F.3d 517 (2d Cir.1998), which affirmed the dismissal of the petition without addressing the procedural forfeiture claim. *Id.* at 519. Prior to leaving the procedural forfeiture issue undecided, the Court of Appeals observed that whether the cursory phrase "unpreserved or without merit" "is too ambiguous to preclude federal court review on the independent ground of procedural default *has yet to be determined in this circuit." Id.* (emphasis added). *Hayes* did not cite *Reid v. Senkowski* and it distinguished *Tankleff* on the grounds not referred to as a basis for the holding in *Tankleff. Id.* at 519, n. 2. Subsequently, in *Fama* the Court of Appeals expressly held that when a state court uses language of the kind used in *Reid, Tankleff* and here, "the validity of the claim is preserved and is subject to federal review." *Fama,* 235 F.3d at 810.

Because Judge Nickerson denied the petition before *Fama's* explicit reaffirmation of *Reid* and *Tankleff,* petitioner argues that the final judgment denying the petition should be set aside and his *Batson* claim should be decided on the merits. This argument fails for a number of reasons.

*Fama* did not change the law of the Second Circuit. Instead, it merely elimi-

nated uncertainty created by the dictum in *Hayes v. Coombe* by reaffirming the holdings in *Reid* and *Tankleff.* Moreover, even if *Fama* did change the law, petitioner should not be entitled to the extraordinary relief he seeks here. Petitioner's *Batson* claim has nothing to do with his guilt or innocence. Indeed, it does not even involve a denial of *petitioner's* right to the equal protection of the laws. *Allen v. Hardy,* 478 U.S. at 259, 106 S.Ct. 2878 ("Our holding [in *Batson*] ensures that states do not discriminate against citizens who are summoned to sit in judgment against a member of their own race and strengthens public confidence in the administration of justice.") Because *Batson* focuses principally on the right of a prospective juror to be seated, granting the relief petitioner seeks will do nothing to remedy the wrong allegedly suffered by jurors who may have been denied improperly their right to sit on the jury that convicted him. As Chief Judge Walker recently wrote:

> At best, then, granting the writ in this case would serve only a deterrent function, discouraging prosecutors from making racebased strikes in the future. The Supreme Court, however, has expressed skepticism about the use of habeas where issuance of the writ could only deter misconduct in criminal prosecutions.... To my mind, this skepticism is sensible given, on the one hand, the insignificant incremental deterrent effect from application on habeas review and, on the other, competing values of finality and respect for state judgments. I firmly believe that any incremental deterrent effect of enforcing the *Batson* rule on collateral review is simply too attenuated to justify issuance of the writ here, where doing so would in no respect protect the individual petitioner's interest in the fairness and accuracy of his conviction.

*Galarza v. Keane,* 252 F.3d 630, 644 (2d Cir.2001) (Walker, C. J., dissenting). Indeed, Judge Newman has argued persuasively that, even on direct appeal, "in those rare cases where the corrective action required to be taken by *Batson* during jury selection is not taken, the incremental benefit of enforcing *Batson* by reversing convictions obtained with fairly representative juries was not warranted." *United States v. Alvarado,* 923 F.2d 253, 254 (2d Cir.1991)(internal citation omitted).

These observations apply today with particular force because the New York courts have consistently enforced *Batson* and any error committed here was simply one of the "innocent mistakes," *Washington v. James,* 996 F.2d 1442, 1450 (2d Cir.1993), *cert. denied,* 510 U.S. 1078, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994) that occur inevitably in any system enforcing the Constitution in good faith. Indeed, the Court of Appeals and the Appellate Division have reversed scores of cases because of errors made by trial judges in applying *Batson.* See e.g. *People v. Mitchell,* 80 N.Y.2d 519, 591 N.Y.S.2d 990, 606 N.E.2d 1381 (1992); *People v. Campos,* 290 A.D.2d 456, 736 N.Y.S.2d 108 (2d Dept.2002); *People v. Jackson,* 213 A.D.2d 335, 623 N.Y.S.2d 881 (1st Dept.1995); *People v. Dabbs,* 192 A.D.2d 932, 596 N.Y.S.2d 893 (3rd Dept.1993); *People v. Lincoln,* 185 A.D.2d 716, 587 N.Y.S.2d 870 (4th Dept. 1992). Under these circumstances, the need for the writ to enforce compliance with the Constitution is doubtful. See *Brown v. Kuhlmann,* 142 F.3d 529, 543 (2d Cir.1998) ("The need for the writ as a remedy to defer state courts from violating the Constitution is most compelling where—notwithstanding the absence of prejudice—there is a real possibility 'that state courts might be hostile to the federal law ... at stake.'") (internal citations omitted).

While the Second Circuit has declined to hold that a *Batson* error may not be raised in timely filed petition pursuant to 28 U.S.C. § 2254, the issue here is whether there is any compelling reason to disturb the finality of a judgment of conviction where petitioner's *Batson* claim was raised in his original habeas corpus petition upon which final judgment has been entered denying the petition and where error did not cause the conviction of a person who is actually innocent.

The answer seems obvious. Indeed, under prevailing rules, if *Batson* itself had been decided after petitioner's judgment of conviction had become final, it could not have been the basis for relief even if it was raised in a timely petition, 28 U.S.C. § 2254(d)(1), *Teague v. Lane*, 489 U.S. at 294–297, 109 S.Ct. 1060, and it certainly could not have been raised in a petition filed more that one year after the judgment became final. The considerations which tilt so heavily in favor of finality apply with far greater force here where petitioner seeks to reopen a judgment denying a habeas corpus petition long after it became final because of a blip in "the arcane jurisprudence of habeas corpus and AEDPA." *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir.2001).

 Petitioner also asserts that another change in the law undermines the validity of Judge Nickerson's rejection of his ineffective assistance of counsel claims. By way of background, the Appellate Division rejected petitioner's claims on the ground that they amounted to second guessing of defense counsel's trial strategy. *See People v. Satterfield*, 66 N.Y.2d 796, 799–800, 497 N.Y.S.2d 903, 488 N.E.2d 834(1985). Judge Nickerson held that this holding (along with others that the Appellate Division addressed on the merits) "were neither contrary to, nor an unreasonable application of, established federal law as determined by the U.S. Supreme Court . . ." Op. at 11.

Petitioner claims that Judge Nickerson should not have applied this deferential standard of review, because the Appellate Division cited to a New York Court of Appeals decision, *People v. Satterfield*, 66 N.Y.2d 796, 497 N.Y.S.2d 903, 488 N.E.2d 834, rather than a holding of the Supreme Court: "The Appellate Division though, with its reliance upon *Satterfield*, never properly applied the Supreme Court's constitutional standards, and this court's determination that it had was therefore flawed." Rabin Aff. at. 5. This claim is frivolous. The analysis employed in *Satterfield* involves an application of the ineffective assistance of counsel standard prescribed in the earlier holding of the Court of Appeals in *People v. Baldi*, 54 N.Y.2d 137, 146, 444 N.Y.S.2d 893, 429 N.E.2d 400 (1981). In *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir.2001), the Second Circuit Court of Appeals held that the rejection of an ineffective assistance of counsel claim by the Appellate Division, which cited only *People v. Baldi*, was entitled to deference even though the Appellate Division "decision denying Linstadt's appeal on the basis of ineffective assistance of counsel does not reference *Strickland v. Washington*, [466 U.S. 668, 104 S.Ct. 2052 (1984)]." *Id.* at 198. This was so because "the standard applied by the state court is not 'diametrically different, opposite in character or nature, or mutually opposed' to the standard" associated in *Strickland*. *Id.* at 198 quoting *Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotation marks omitted in *Lindstadt*). The same is true in the present case. The standard applied by the Appellate Division—the *Baldi* standard—is the same one applied in *Lindstadt*. Judge Nickerson correctly accorded it the deference required by AEDPA. None of the holdings subsequent to the denial of the

petition here undermined the correctness of this holding.

I have considered petitioner's remaining arguments and find them to be without merit. Petitioner's motion pursuant to Fed.R.Civ.P. 60(b)(6) is denied.

SO ORDERED.