**Eric CLAUDIO, Petitioner–Appellant,**

v.

**Leonard A. PORTUONDO, Superinten-dent, Shawkangunk Correctional Facility, Respondent–Appellee.**

**No. 02–2663.**

United States Court of Appeals, Second Circuit.

Sept. 4, 2003.

Roland R. Acevedo, New York, NY, for Petitioner–Appellant.

Donna Aldea, Assistant District Attorney, for Richard A. Brown, District Attorney, Queens County (John M. Castellano, Assistant District Attorney, on the brief),

Kew Gardens, NY, for Respondent–Appellee.

PRESENT: CALABRESI, KATZMANN, Circuit Judges, and POLLACK, District Judge.*

SUMMARY ORDER

Petitioner Eric Claudio was convicted of murder in the second degree, *see* N.Y. PENAL LAW § 125.25[1], after a jury trial in the Supreme Court of the State of New York, Queens County. He was sentenced to an indeterminate term of twenty-five years to life imprisonment. On January 31, 2000, the Appellate Division unanimously affirmed the conviction, holding that the evidence was legally sufficient to establish the petitioner's guilt beyond a reasonable doubt. *People v. Claudio*, 268 A.D.2d 595, 702 N.Y.S.2d 836 (N.Y.App. Div.2000). On May 4, 2000, petitioner's application for leave to appeal to the New York State Court of Appeals was denied. *People v. Claudio*, 95 N.Y.2d 794, 711 N.Y.S.2d 162, 733 N.E.2d 234 (2000). On August 3, 2001, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that there was insufficient evidence to support his conviction. In an order dated September 25, 2002, the district court (Dearie, *J.*) dismissed the petition on the ground that it was filed one day late. *See* 28 U.S.C. § 2244(d)(1) (imposing one-year period of limitation on the filing of habeas petitions by state prisoners). Nevertheless, the district court issued a certificate of appealability pursuant to 28 U.S.C. § 2253(c) on petitioner's insufficiency claim.

On appeal, the petitioner asks us to exceed the bounds of the certificate of appealability by considering whether the district court correctly held that the petition was untimely. What is more, the petitioner would urge us not to confine that review to those arguments on timeliness that he made to the district court. Rather, he asks that we exercise our discretion to consider arguments that he did not raise to the district court and that appear to pose questions of first impression for this court. Specifically, we are urged to adopt the method for computing the AEDPA's statute of limitation that the Tenth Circuit recently established in *United States v. Hurst*, 322 F.3d 1256 (10th Cir.2003). In the alternative, we are asked to resolve the question of whether a petitioner who makes no actual innocence claim in his habeas petition-and who offers no new evidence of innocence to the district court or to this court-may argue, under *Whitley v. Senkowski*, 317 F.3d 223 (2d Cir.2003), that the Constitution requires an actual innocence exception to AEDPA's statute of limitations.

Instead of straining the bounds of our discretion by reaching these rather complicated questions, we will instead dismiss the petition on the ground that, assuming it were properly before us, we would hold that it fails on the merits. *Cf. Fama v. Comm'r of Correctional Servs.*, 235 F.3d 804, 816 (2d Cir.2000) (assuming for the sake of judicial economy that an amendment to the habeas petition was proper and disposing of the petition on the merits); *id.* at 816 n. 11 (courts may assume hypothetical jurisdiction where the jurisdictional requirement is not of a constitutional dimension).

It is well established that under the standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560

---

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

(1979), a defendant challenging the sufficiency of the evidence supporting a conviction faces a heavy burden. *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir.2002). "We overturn a conviction on that basis only if, after viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences in its favor, we determine that 'no rational trier of fact' could have concluded that the Government met its burden of proof." *Id.* (citation omitted). Moreover, a petitioner who asserts such a claim on federal habeas faces an even more difficult task if a state court has already determined that the evidence supporting the conviction satisfies the constitutional requirements of *Jackson v. Virginia.* This is because a federal court may not disturb a state court's adjudication of the merits of a constitutional claim unless that court's decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

With these principles in mind, we will consider the main pieces of evidence that the jury had before it when it convicted the petitioner of intentional murder. *See* N.Y. PENAL LAW § 125.25 ("A person is guilty in the second degree when: With intent to cause the death of another person, he causes the death of such person or of a third person."). On December 14, 1994, the petitioner and the victim, Steven Williams, had an argument over gambling. The next evening, Williams and his friends Hand and Tompy met to go to the store for some drinks. Williams and Tompy started walking towards the store, and Hand stayed back to wait for another friend. While walking, Williams and Tompy encountered the petitioner's friend and co-defendant, Curtis Evans. Evans and Williams began to argue, and Evans punched Williams in the face, causing him to fall to the ground, where he lay motionless. Evans then straddled Williams and hit him in the face repeatedly.

The petitioner then arrived at the scene and, while Williams was still on the ground, proceeded to kick him in the face and stomp on his head repeatedly. Evans and Tompy then began to argue, but the petitioner continued to kick Williams in the face. When Evans turned back towards Williams, he reached into Williams' jacket and found his gun. After punching Williams a few more times, Evans ran off, and the petitioner continued to kick Williams. The petitioner then took Williams' bracelet, beeper, and money, and left.

Hand, who had shown up around the time Evans found the gun, went over to Williams and saw that he was lying unconscious on the ground, breathing hard, and bleeding from his face. A police car and ambulance arrived, and a paramedic said that Williams "looked close to if not ready to expire." Williams was comatose when he arrived at the hospital, and he died several weeks later on January 25, 1995. Although Williams' death certificate lists the cause of death as multiple blunt impacts to the head, a subsequently performed autopsy of Williams' brain revealed that he most likely died from Diffuse Axonal Injury (DAI), a severing of the axons in the brain that occurs when the brain is suddenly moved inside the skull.

The petitioner argues that medical evidence presented at trial established that, for DAI to occur, the impact must be sustained on the top or front of the head, and not the back. Additionally, the head's movement cannot be restricted for DAI to occur, although the person does not have to be standing. From this, the petitioner argues that his kicking and stomping of Williams' head did not contribute to his

death because, by the time Williams was on the ground, the petitioner's kicks could not have contributed to the DAI.

The government points out, however, that the medical experts agreed that DAI could be caused by multiple blows to the head, and not just a single impact, and that Evans testified that Williams's head was not on the ground when the petitioner began kicking him. The petitioner never denies that this evidence was presented to the jury. From this evidence, a rational juror would be free to conclude that the petitioner's kicking caused, or at least contributed to, the DAI. Indeed, one of the medical experts testified that it was probable that the victim's condition became progressively worse throughout the onslaught of punches and kicks. Moreover, a rational juror could readily infer from the nature of the petitioner's beating of Williams that the petitioner had the requisite intent to commit intentional murder.[1] At best, the petitioner has only shown that there was conflicting evidence on whether his kicking contributed to Williams' death. And, for the evidence to be sufficient to uphold the conviction, it is, of course, enough that a jury could have reasonably resolved these conflicts in the government's favor.

We conclude that the petitioner's habeas claim fails on the merits. Accordingly, we need not expand the certificate of appealability to consider the new arguments raised by petitioner on the issue of the timeliness of his petition. We note that, because neither party presented to the district court or to this court a full record of the state court proceedings, we have based our determination of the petitioner's habeas claim on each party's rendition of the record that was not specifically controverted by the other party.

For the foregoing reasons, the district court's dismissal of the petition is AFFIRMED.

---

1. Because there is sufficient evidence to support liability for intentional murder, we need not discuss whether the evidence also supports the prosecution's theory that the petitioner was an accomplice to co-defendant Evans.